**STATE WIDE ALUMINUM, INC.,**
**Appellant–Defendant,**

v.

**POSTLE DISTRIBUTORS, INC.,**
**Appellee–Plaintiff.**

**No. 71A03–9302–CV–61.**

Court of Appeals of Indiana,
Third District.

Dec. 22, 1993.

Rehearing Denied March 29, 1994.

John C. Hamilton, Don G. Blackmond, Doran, Blackmond, Ready, Hamilton & Williams, South Bend, for appellant-defendant.

Paul E. Becher, J. Scott Troeger, Barnes & Thornburg, Elkhart, for appellee-plaintiff.

HOFFMAN, Judge.

Appellant-defendant State Wide Aluminum, Inc. (State Wide) appeals from a summary judgment entered in favor of appellee-plaintiff Postle Distributors, Inc. (Postle).

The facts relevant to this appeal disclose that Postle, based in Elkhart, Indiana, is a large scale supplier of extruded aluminum in the field of recreational vehicles, namely in what is called the truck cap industry. State Wide like Postle, is based in Elkhart, Indiana. It is also involved in the truck cap industry but primarily as a manufacturer of component parts selling to truck cap makers windows and doors which it fabricates from extruded aluminum. Although mainly a manufacturer, State Wide also acts as a broker selling and distributing some of the extruded aluminum it purchases from suppliers.

Until 1986, Postle acted only as a supplier of extruded aluminum. However, in 1986, Postle obtained an inventory of windows and doors and began selling these items in the Western United States, the same territory in which State Wide also sold similar products.

The present dispute was initiated by Postle which brought a claim against State Wide in the Elkhart Superior Court No. Two [1] on December 29, 1988, seeking repayment for a debt of $50,607.76 for goods sold on account. To collect the debt, Postle filed a request for receiver with its complaint. However, Postle did not pursue this issue further.

On January 18, 1989, State Wide answered and filed a two-count counterclaim against Postle. In defense of non-payment for the above debt, State Wide, in Count I, claimed Postle had breached an oral exclusive dealing and non-competition agreement. According to State Wide, by the terms of the contract, it agreed orally to purchase its requirements of aluminum extrusions, i.e., roof rails, base rails, angles, side trim and roof edge, from Postle so long as Postle had those items in stock. In return, Postle promised that it would not compete with State Wide by selling either the above items or aluminum doors and windows to State Wide's existing client base. Postle denied any such agreement

1. Venue of the case was changed to St. Joseph County on February 13, 1989.

existed. Count II included a request for attorney's fees under IND.CODE § 34–1–32–1 (1988 Ed.); State Wide alleged that Postle's request for appointment of receiver was frivolous, unreasonable, groundless and brought in bad faith.

After discovery began, on June 29, 1990, State Wide asked for a protective order pursuant to Ind.Trial Rule 26(C). The purpose was to prevent Postle from obtaining, through discovery, certain internal and confidential financial information relevant to State Wide's operations which State Wide feared Postle would use to gain a competitive advantage in the truck cap markets they were involved in. The trial court granted the request on July 9, 1990, and entered a confidentiality order applying equally to both parties.

During discovery, Postle disclosed in a deposition information pertaining to the identity and ownership interest of one of its shareholders. Shortly thereafter, on August 8, 1990, State Wide requested a partial release from the protective order as to this information only. Specifically, State Wide wanted to be able to disclose Postle's actual ownership to its customers and potential customers.

On August 20, 1990, a hearing was held. In support of its request, State Wide submitted an affidavit from one of its employees which contained information about Postle's ownership. State Wide stated that the information in the affidavit was obtained independently of the discovery process. However, State Wide conceded that the information may not be completely accurate. State Wide argued that to prevent it from disseminating untruthful information to the marketplace which may lead to another lawsuit initiated by Postle, the truth must be disclosed and the only way to do so would be to vacate the confidentiality order as to the information concerning Postle's actual ownership.

Postle responded by stating that the affidavit was erroneous and based on gossip. It also argued that the information State Wide sought to be disclosed to the public was irrelevant to the litigation. It further argued that to allow State Wide to submit an irrelevant and inaccurate affidavit for the purpose of obtaining disclosure of the contents of the deposition, protected by the confidentiality order, would defeat the entire purpose of the order. After hearing these arguments, the trial court denied State Wide's request to vacate the confidentiality order as to the contents of the deposition.

On June 28, 1991, Postle filed two motions for partial summary judgment: the first on its complaint and the second on Count II of State Wide's counterclaim. Also, as an affirmative defense to Count I of the counterclaim, Postle claimed that State Wide was in pari delicto and barred from relief because any alleged agreement existing between itself and State Wide was illegal in violation of the Sherman Anti-Trust Act, state anti-trust laws, and common law.

Also, on December 13, 1991, State Wide requested summary judgment on Count I of State Wide's counterclaim. On February 3, 1992, State Wide asked once more for partial release from the protective order. Stating that the information sought to be disclosed by State Wide had nothing to do with the development of the case, the trial court rejected State Wide's request to publicize the information.

On October 30, 1992, after having held several hearings, the trial court entered a written order of summary judgment in favor of Postle and against State Wide on Postle's complaint [2] and Count I and II of State Wide's counterclaim. The trial court also ordered the confidentiality order and all discovery generated remain sealed and confidential until 30 days after exhaustion of all appeals after which the information was to be returned to the parties. This appeal ensued.

State Wide raises three issues for review. As restated, they are:

**2.** The trial court had already orally granted summary judgment in favor of Postle and against State Wide on Postle's complaint on July 12, 1991. State Wide was ordered to pay $50,-607.76.

(1) whether summary judgment in favor of Postle on Count I of State Wide's counterclaim was appropriate;

(2) whether the trial court erred in denying State Wide's request for attorney's fees under IND.CODE § 34–1–32–1; and

(3) whether the trial court committed error by its entry of the confidentiality order.

■ The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law. *Chambers v. American Trans Air, Inc.* (1991), Ind.App., 577 N.E.2d 612, 614, *trans. denied.* Our standard of review is the same as that used by the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 994, *reh. denied.* Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. Ind.Trial Rule 56(C).

■ The Sherman Anti–Trust Act (the "Act") declares, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal...." 15 U.S.C. § 1.[3] This language has been interpreted to mean that only unreasonable restraints of trade are proscribed. *Standard Oil Co. v. U.S.* (1911), 221 U.S. 1, 60–61, 31 S.Ct. 502, 516–517, 55 L.Ed. 619, 641–642. To determine whether a particular restraint of trade unreasonably restricts competition, the Supreme Court has developed two standards—the rule of reason and the per se rule. *See National Society of Professional Engineers v. U.S.* (1978), 435 U.S. 679, 692, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637, 650.

■ Ordinarily, the rule of reason is applied. *Business Electronics v. Sharp Electronics* (1988), 485 U.S. 717, 723, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808, 816. Under this analysis, the fact-finder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited. *Continental T.V., Inc. v. GTE Sylvania Inc.* (1977) 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568, 580.

■ There are, however, certain agreements "[w]hich because of their pernicious effect on competition and lack of redeeming virtue, are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the business excuse for their use." *Northern Pacific R. Co. v. U.S.* (1958) 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545, 549. In these situations, where the alleged agreement is "manifestly anticompetitive," the per se rule is used instead of the rule of reason. *Business Electronics*, 485 U.S. at 723, 108 S.Ct. at 1519, 99 L.Ed.2d at 816.

■ Which rule is used often depends on whether the restraint is implemented by a vertical or horizontal agreement. *See Jayco Systems v. Savin Business Machines Corp.* (5th Cir.1985) 777 F.2d 306, 317, *cert. denied* 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 30. "Vertical agreements are those among persons at different levels of the market structure—i.e., among a manufacturer and its distributors—in contra-distinction to horizontal agreements among competitors at the same level of the market structure—i.e., among manufacturers or distributors." *U.S. v. Topco Associates, Inc.*, (1972), 405 U.S. 596, 607–608, 92 S.Ct. 1126, 1133, 31 L.Ed.2d 515, 525–526. Whereas horizontal restraints of trade are traditionally deemed per se illegal, vertical restraints of trade are not per se illegal unless they include some agreement on price or price levels. *Business Electronics*, 485 U.S. at 724–725, 108 S.Ct. at 1519, 99 L.Ed.2d at 816.

---

**3.** For the Sherman Anti–Trust Act to apply, the alleged contract must also affect interstate commerce. *U.S. v. General Motors Corp.* (7th Cir. 1941) 121 F.2d 376, 402, *cert. denied* 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497. Here, the undis-puted facts disclose that the alleged exclusive dealing and non-competition agreement between State Wide and Postle affected transactions in California, Utah, and Indiana. Thus, this requirement is met.

An agreement to allocate customers between competing companies at the same level of the market structure has been held to be horizontal in nature and per se illegal under the Act.

*U.S. v. Cooperative Theatres of Ohio, Inc.* (6th Cir.1988) 845 F.2d 1367, 1371; *See Topco Associates,* 405 U.S. at 608, 92 S.Ct. at 1133, 31 L.Ed.2d at 525–526;

*U.S. v. Koppers Co.* (2d Cir.1981) 652 F.2d 290 *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617;

*U.S. v. Brighton Building and Maintenance Co.* (7th Cir.1979) 598 F.2d 1101, 1106 *cert. denied* 444 U.S. 840, 100 S.Ct. 80, 62 L.Ed.2d 52.

The *Cooperative* case is similar to the present case. In *Cooperative,* two movie theatre booking agents entered into an agreement whereby both promised not to compete for each other's clients. Specifically, although each agent could accept unsolicited business from the other's customers, neither could actively solicit each other's current customers. The agreement did not prevent the two from competing for new clients. Applying the per se standard, the district court found the agreement to be a horizontal agreement among competitors to allocate customers and, therefore, void in violation of the Act.

On appeal, the *Cooperative* court rejected appellant's argument that the district court erred by using the per se rule instead of the rule of reason standard. In affirming the decision below, the court reasoned the agreement was a type of customer allocation and hence the type of "naked restraint" which triggers the application of the per se rule of illegality.

■ Here, like the appellant in *Cooperative,* State Wide contends the trial court erred by applying the per se rule to the agreement. Categorizing the relationship between itself and Postle as that of a purchaser (State Wide) and supplier (Postle), State Wide claims that the agreement was vertical in nature mandating the application of the rule of reason. Postle disagrees and argues that the relationship between itself and State Wide, as it pertained specifically to the alleged agreement, was that of two competitors in the same markets, i.e., as distributors of aluminum extrusions and windows and doors.

As the facts disclose and as State Wide concedes, although Postle supplied it with extruded aluminum, Postle was also a competitor in both the distribution of extruded aluminum and the sale of windows and doors. According to State Wide, Postle's breach occurred when it obtained an inventory of windows and doors and started selling the same in the Western United States in direct competition with State Wide. Moreover, as to aluminum extrusions, State Wide claims that Postle breached the agreement by offering to State Wide's accounts the same product that State Wide was selling, but at lower prices.

Such an arrangement is akin to the arrangement struck in *Cooperative.* As in *Cooperative,* because Postle and State Wide were competitors at the same level of operation, i.e., as to the distribution of aluminum extrusions and the sale of windows and doors in the Western United States, the portion of the agreement here, allegedly breached by Postle, is horizontal in nature and the type of "naked restraint" which triggers the application of the per se rule of illegality. Accordingly, the trial court did not commit error when it granted summary judgment in favor of Postle and against State Wide on this issue.

■ Next, State Wide claims that the trial court erred by not allowing it to collect attorney's fees pursuant to IND.CODE § 34–1–32–1 in defending against Postle's Request for Receiver. The Court of Appeals reviews de novo a trial court's conclusion of law that attorney's fees were not warranted under IND.CODE § 34–1–32–1. *Tipton v. Roerig* (1991), Ind.App., 581 N.E.2d 1279, 1282.

IND.CODE § 34–1–32–1(b) provides, in pertinent part, "[i]n any civil action, the court may award attorney's fees as part of the cost to the prevailing party." As a threshold matter, a claimant must show that it is the prevailing party as identified by the statute.

Although Postle requested a receiver with its original complaint, the motion was not pursued through further litigation. State Wide argues that because it did not pursue the receiver, Postle did not succeed in obtaining the receivership and thus, State Wide is the prevailing party under IND.CODE § 34–1–32–1. However, even if State Wide were correct that Postle's failure to litigate the receivership issue amounted to a ruling in its favor, a favorable ruling on a motion is not a "judgment" within the meaning of IND.CODE § 34–1–32–1. *See State ex rel. Prosser v. Ind. Waste Sys.* (1992), Ind.App., 603 N.E.2d 181, 183.

In *Prosser*, this Court found any ambiguity as to the identity of the "prevailing party" in subsection (b) of IND.CODE § 34–1–32–1 is resolved by the language of subsection (a) of the same statute. *Id.* IND.CODE § 34–1–32–1(a) reads, in pertinent part, "[i]n all civil actions, the party recovering judgment shall recover costs." State Wide is not a "prevailing party" under IND.CODE § 34–1–32–1. The trial court did not err in denying its request for attorney's fees.

▬ Last, State Wide claims that the trial court erred by allowing the confidentiality order to remain in effect beyond this litigation. State Wide contends that the confidentiality order violates its First Amendment rights of free speech.[4] First Amendment rights, under certain circumstances, may be waived by consenting to a protective order or otherwise. *See National Polymer Products v. Borg–Warner Corp.*, (6th Cir.1981) 641 F.2d 418, 423–424 (although recognizing that First Amendment rights may be waived, there was no waiver where the parties did not intend to extend the protective order to information disclosed at trial; although prior restraints on speech bear a heavy presumption against their constitutional validity, considerations that may bear against that presumption are whether disclosure might jeopardize the party's right to a fair administration of justice, whether disclosure will actually impair legitimate business interests of that party and whether the purpose of disclosure would clearly constitute an abuse of the discovery process).

Here, State Wide initially sought the protective order to prevent Postle from accessing information that could be used against it in the marketplace. Although the trial court accepted State Wide's request, the court ordered that it apply equally to both parties. The order ensured that neither information such as State Wide's confidential financial affairs nor that Postle's actual ownership could be disseminated to the public to impair the legitimate business interests of either party. It is reasonable to assume that State Wide knew that any such information gained through discovery would be protected beyond the bounds of the present dispute. Thus, its First Amendment arguments are subject to waiver.

▬ However, absent waiver, State Wide's claim lacks merit. The trial court has broad discretion in ruling on issues of discovery. *Lucas v. Dorsey Corp.* (1993), Ind.App., 609 N.E.2d 1191, 1195. This Court will interfere only when there is an abuse of discretion. *Id.* Such abuse of discretion in matters of discovery occurs only where the trial court has reached an erroneous conclusion which is clearly against the logic and effect of the facts of the case. *State Bd. of Public Welfare v.*

---

4. Because State Wide disputes the constitutionality of the confidentiality order, raising First Amendment arguments, *Seattle Times v. Rhinehart* (1984), 467 U.S. 20, 37, 104 S.Ct. 2199, 2209–2210, 81 L.Ed.2d 17, 29 applies (holding that First Amendment rights of free speech and press are not offended by a protective order restraining the public disclosure of information obtained through pretrial discovery where the order is based on good cause and does not restrict the dissemination of information obtained from other sources). The *Seattle Times* requirements were met here. Good cause existed because State Wide and Postle were competitors in the truck cap industry and both had a protectable interest in keeping information about their business affairs from each other. Also, as Postle points out, as the trial court made clear and as the protective order itself provides, it pertained only to information obtained in pre-trial discovery and it did not restrict the dissemination of information gained from sources other than pre-trial discovery.

**518**

*Tioga Pines* (1992), Ind.App., 592 N.E.2d 1274, 1276, *trans. denied.* Because State Wide is seeking a partial release of information obtained under an Ind.Trial Rule 26(C) protective order, it bears the burden of showing that the trial court's use of the protective order was an abuse of discretion. *See Geib v. Estate of Geib* (1979), Ind.App., 395 N.E.2d 336, 338.

Moreover, when information is disclosed solely in reliance upon a protective order, a court may refuse to modify the protective order to allow dissemination of such information outside the scope of the litigation. *See Omega Homes, Inc., v. Citicorp Acceptance Co.* (W.D.Va.1987) 656 F.Supp. 393, 404. (where parties stipulated to a protective order and the court ordered that discovered information "shall be utilized only in connection with this civil action," the court refused to rewrite the terms of the order and to apply them retroactively to allow disclosure because the other party disclosed certain confidential information only in reliance on the protective order).

The facts disclose that Postle volunteered the information about its actual ownership, through a deposition which it thought would be subject to the confidentiality order. It was only after State Wide discovered this information, which could be used to its advantage in the marketplace, did it seek a partial release from the protective order.

State Wide argued to the trial court that such information was relevant to showing Postle's bad faith in seeking a receivership. On appeal, State Wide further argues that public disclosure of such information would serve two purposes, both beneficial to the truck cap industry: it would enhance State Wide's position in the marketplace while simultaneously taking away the competitive advantage in the industry it feels Postle already has.

We agree with Postle and the trial court below that the information sought to be disclosed by State Wide had little relevance to the underlying dispute. Essentially, State Wide sought the protection of T.R.

26(C) to shield itself from Postle gaining any information which might damage its own position in the marketplace. After uncovering information which could be used for the same purpose against Postle, State Wide asked the court below and now asks this Court on appeal to retroactively change the protective order to allow it to disseminate this information only to damage the reputation of its competitor. This is a tactic we will not endorse.

None of State Wide's reasons for vacating the confidentiality order as to the protected deposition are compelling. State Wide has failed to show that under the circumstances of the present case, the trial court's decision is either against logic or based on erroneous conclusions. There was no abuse of discretion here. Finding no error, the decision of the trial court is affirmed.

GARRARD and NAJAM, JJ., concur.