



FILED

Jul 31 2024, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

James D. Frye,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

July 31, 2024

Court of Appeals Case No.
23A-CR-1691

Interlocutory Appeal from the Greene Circuit Court

The Honorable Erik C. Allen, Judge

Trial Court Cause No.
28C01-2302-F3-2

---

**Opinion by Judge May**
Judge Brown and Senior Judge Shepard concur.

**May, Judge.**

[1] In this interlocutory appeal, James D. Frye appeals the trial court's decision to grant the State's request for a protective order to prohibit Frye from questioning the alleged victim ("AV") about her sexual history with Frye. Frye makes several arguments, which we consolidate and restate as whether the trial court abused its discretion when it granted the State's motion for a protective order. We reverse and remand.[1]

## Facts and Procedural History

[2] Frye and AV were in a romantic relationship and lived together. In early January 2023, AV ended their romantic relationship. She left the apartment she shared with Frye for a few days and returned on January 5, 2023. The incident at issue in this case allegedly occurred during the morning of January 6, 2023.

[3] AV told[2] Linton Police Department Officer Logan E. Hobbs:

> When [AV] returned to the apartment [on January 5, 2023], she told Frye that the two of them would "never be romantic again" and "never be sexual again." [AV] stated that Frye "absolutely understood" the living situation and that there was no longer [a] sexual relationship between him and [AV].
>
> [AV] stated that Frye did not have a separate bed or his furniture in the residence, so she allowed him to sleep in her bed for the

---

[1] We held oral argument on this case on May 17, 2024, in the Randall T. Shepard Courtroom at The Old Courthouse in Evansville, Indiana, before participants of the Indiana State Bar Association's Leadership Development Academy, as well as members of the public. We thank Courthouse staff for their hospitality and counsel for their able presentations.

[2] As this case has not gone to trial, the facts stated herein come from the probable cause affidavit.

night. [AV] stated that she believes Frye went to bed at approximately 0100 or 0200 on 6 January, and she went to bed at approximately 0500. [AV] stated that she woke up at approximately 0845 laying on her stomach and Frye was "literally inside" her. She later clarified that meant Frye's penis was inside her vagina.

[AV] stated that when she woke up, she pushed Frye away. Frye then stopped, got off the bed, and began apologizing to her. She further stated that Frye told her "I'm so sorry," "I just raped you," and "I'm disgusting." [AV] stated she asked Frye why he began having sex with her while she was asleep, and he told her that he had been "going down" on [AV] and thought she was awake. [AV] stated she then drove Frye to his father's residence in Monroe County and then went to the hospital to have a SANE[3] examination done.

[AV] provided screenshots of text messages between her and Frye that were exchanged after she took him to his father's residence. In those text messages, [AV] asks Frye "Why did you do this." Frye responds that he is "really sorry" and "I should have just respected you as a person and your body I'm sorry I feel so low." Frye then goes on to deny that the incident was rape because he's woken [AV] up with sex in the past. [AV] clarified that those instances were consensual, and the incident on 6 January was not.

---

[3] SANE is an acronym for Sexual Assault Nurse Examiner, which is a nurse who conducts a physical examination of a person after an alleged sexual assault.

(App. Vol. II at 15) (footnote added). Based on the information in the probable cause affidavit, on February 14, 2023, the State charged Frye with Level 3 felony rape of a person who is unaware sexual conduct is occurring.[4]

[4] On April 7, 2023, Frye filed notice that he wanted to take a deposition of AV. During pretrial conferences and communications between the parties, Frye indicated he "intend[ed] to inquire of [AV] about prior sexual behavior between [AV] and [Frye]." (*Id*. at 45.) On May 19, 2023, the State filed a motion for protective order arguing Indiana Evidence Rule 412 and Indiana Code section 35-37-4-4 prohibited Frye from asking AV about her sexual history with Frye. The State asserted:

> Because the Rape Shield law prohibits the introduction of such matters into evidence, inquiry into those same matters in discovery is not reasonably calculated to lead to the discovery of admissible evidence. Further, such matters are not material to any cognizable defense or fact at issue in this case. Finally, even should this Court determine otherwise, the prejudicial effect of the proffered evidence outweighs the probative value.

(*Id*.) The same day, Frye filed an objection to the State's motion for a protective order and argued he had a right to depose AV about her sexual history with Frye because "[c]onsent may be an issue . . . [and] [i]t is necessary to ask [AV] questions regarding their relationship, sexual and in general." (*Id*. at 47.) The trial court held a hearing on the matter on May 26, 2023, and on

---

[4] Ind. Code § 35-42-4-1(a)(2).

June 2, 2023, issued an order denying the State's motion for a protective order. In that order, the trial court stated:

> 5. It appears the ultimate question is whether a competent adult can give advance consent to sexual activity while they are asleep or otherwise unconscious. If such advance consent is permitted then consent is at issue and is a question of fact. However, if such advance consent is not permitted then consent is not at issue and is a pure issue of law. The State has presented citations to legal authority that the general rule is that if a man has intercourse with a woman while she is asleep then the act is rape because the act is without consent. However, none of the cited cases address the issue of whether advance consent is a legal possibility, and the Court has been unable to locate any legal authority that addresses the issue of advance consent.

> 6. It appears the issue of whether a competent adult can give advance consent to sexual activity while they are asleep is unsettled, and the Court cannot make a final determination at this point whether evidence of advance consent is admissible or inadmissible. Therefore, inquiry into the prior sexual behavior of [Frye] and [AV] may lead to admissible evidence on the issue of consent.

(*Id*. at 54-5.)

On June 5, 2023, the State filed a motion asking the trial court to reconsider the denial of its request for a protective order. Therein, the State cited several cases from other jurisdictions that had rejected the defense of advance consent. The State acknowledged: "[a]lthough no Indiana case has yet examined the concept of 'advance consent' as a defense to rape, every other State that had occasion to consider it has flatly rejected it as a defense[.]" (*Id*. at 57.) Therefore, the State

contended it had "every reason to believe that the Indiana Supreme Court and the Indiana Courts [sic] of Appeal [sic] would also reject it as a defense[.]" (*Id.*)

[6] On June 8, 2023, the trial court rescinded its previous order and entered a protective order prohibiting Frye from deposing AV about her sexual history with Frye. On June 14, 2023, Frye filed a motion to certify the trial court's order for interlocutory appeal. On June 21, 2023, the trial court certified its order for interlocutory appeal, and we accepted jurisdiction on August 18, 2023.

## Discussion and Decision

[7] Frye challenges the trial court's grant of the State's protective order to prohibit him from deposing AV about her sexual history with Frye.

> The standard of review in discovery matters is limited to determining whether the trial court abused its discretion. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. And because the nature of discovery issues is fact-sensitive, the trial court's ruling is cloaked in a strong presumption of correctness on appeal. We also note that a trial court's discovery ruling will be sustained on any legal basis in the record, even if it is not the basis enunciated by the trial court.

*Plouch v. State*, 222 N.E.3d 357, 360 (Ind. Ct. App. 2023) (internal citations omitted).

[8] Discovery-related protective orders can be requested pursuant to Indiana Trial Rule 26(C) and such orders are designed to "protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense[.]" T.R. 26(C). Under Trial Rule 26(C), the burden is initially on the party seeking the protective order to show "good cause" why such an order is required to protect the party from "annoyance, embarrassment, oppression, or undue burden or expense[.]" *Estate of Lee ex rel. McGarrah v. Lee & Urbahns Co.*, 876 N.E.2d 361, 367-8 (Ind. Ct. App. 2007) (quoting T.R. 26(C)). After a showing of good cause has been made, the burden shifts to the party seeking discovery of protected material to establish that the trial court's protective order constitutes an abuse of discretion. *Id*. Frye contends the trial court abused its discretion when it granted the State's motion because the protective order too excessively limits his ability to conduct discovery to determine any possible defenses and a trial strategy.

[9] Generally, Indiana has "very broad discovery rules[.]" *Nat'l Collegiate Athletic Assoc. v. Finnerty*, 191 N.E.3d 211, 220 (Ind. 2022). Under Indiana Trial Rule 26(B)(1), parties may "obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter of the pending action[.]" "[I]t is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead the discovery of admissible evidence." *Id*. Discovery may be limited if the court determines:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought or; (iii) the burden or expense of the proposed discovery outweighs its likely benefit,

taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*Id.* The State argues "good cause" existed under Trial Rule 26(C) to limit Frye's questions about the prior sexual relationship between himself and AV because of Indiana's Rape Shield provisions.

[10] In "a civil or criminal proceeding involving alleged sexual misconduct[,]" evidence offered "to prove the victim . . . engaged in other sexual behavior" or offered to prove "a victim's . . . sexual predisposition" is generally inadmissible. Evid. R. 412(a). However, if a criminal defendant asserts a defense of consent and seeks to offer evidence of "specific instances of a victim's . . . sexual behavior with respect to the [defendant] . . . to prove consent[,]" the evidence may be admitted. Evid. R. 412(b)(1)(B). Indiana Evidence Rule 412 is often called the "Rape Shield Rule." *Graham v. State*, 736 N.E.2d 822, 824 (Ind. Ct. App. 2002), *trans. denied.* Our Indiana Supreme Court noted the policy behind the Rape Shield Rule in *State v. Walton*:

> [I]nquiry into a victim's prior sexual activity is sufficiently problematic that it should not be permitted to become a focus of the defense. Rule 412 is intended to prevent the victim from being put on trial, to protect the victim against surprise, harassment, and unnecessary invasion of privacy, and, importantly, to remove obstacles to reporting sex crimes.

715 N.E.2d 824, 826 (Ind. 1999) (quoting *Williams v. State*, 681 N.E.2d 195, 200 (Ind. 1997)).

[11]   Indiana law also contains a "Rape Shield Statue" codified at Indiana Code section 35-37-4-4, which is similar, but not identical, to the Rape Shield Rule. Like the Rape Shield Rule, the Rape Shield Statute prohibits the admission of, as is relevant here, "evidence of the victim's past sexual conduct[.]" Ind. Code § 35-37-4-4(a)(1). However, evidence of the "victim's . . . past sexual conduct with the defendant . . . may be introduced if the judge finds . . . that it is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." Ind. Code § 35-37-4-4(b)(1). The Rape Shield Statute "was designed to protect victims of sex crimes from a general inquiry into their sexual past." *Baker v. State*, 750 N.E.2d 781, 783 (Ind. 2001).

[12]   Frye is charged with the Level 3 felony rape of AV because he allegedly had sexual intercourse with her while she was "unaware" the sexual activity was occurring, that is, while she was asleep. *See* Ind. Code § 35-42-4-1(a)(2) (defining sexual activity with an "unaware" person as rape). We examined the meaning of the word "unaware" in *Nolan v. State*, 863 N.E.2d 398 (Ind. Ct. App. 2007). We first stated:

> [W]hile "unaware" has not been defined by the legislature, we have held that "'[u]naware' is defined as 'not aware: lacking knowledge or acquaintance: UNCONSCIOUS.'" *Becker v. State*, 703 N.E.2d 696, 698 (Ind. Ct. App. 1998) (quoting Webster's 3d New Int'l Dictionary 2483 (1986 ed.)).
>
> Circumstances in which we have found a victim to have been "unaware" include where the victim was asleep, as "a person is

unconscious during sleep." *Id*. In addition, we found a female victim unaware when she had "lost consciousness due to inebriation." *Glover v. State*, 760 N.E.2d 1120, 1124 (Ind. Ct. App. 2002) (adopting the *Becker* definition of "unaware" to the corresponding provision of the rape statute, I.C. § 35-42-4-1(a)(2)), *trans. denied*. And our supreme court has suggested that a victim's illness and intoxication may lead to her being sufficiently "unaware" for the rape statute to apply, even if the victim never loses consciousness. *See Bryant v. State*, 644 N.E.2d 859, 860 n.1 (Ind. 1994).

*Id*.

[13] We then examined the use of "unaware" in the statutory definition of Class B felony criminal deviate conduct:

(a) A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when:

(1) the other person is compelled by force or imminent threat of force;

(2) the other person is unaware that the conduct is occurring; or

(3) the other person is so mentally disabled or deficient that consent to the conduct cannot be given;

commits criminal deviate conduct, a Class B felony.

Ind. Code § 35-42-4-2(a)(2) (2004) (repealed by P.L. 158-2013, SEC. 438 and P.L. 214-2013, SEC. 37, eff. July 1, 2014). We noted the "criminal deviate

conduct statute as a whole supports the proposition that 'unaware' is not 'unconscious' and that, instead, the legislature intended a broader definition." *Nolan*, 863 N.E.2d at 402. Looking at the statutory language as a whole, we observed:

> [C]lause (1) [of Indiana Code § 35-42-4-2(a)] proscribes deviate sexual conduct on a person who cannot voluntarily consent to such conduct because he or she "is compelled by force or imminent threat of force." Clause (2) prohibits deviate sexual conduct on a person who is "unaware" of the conduct, presumably because one who is "unaware" cannot voluntarily consent to the conduct. I.C. § 35-42-4-2(a)(2). And clause (3) expressly proscribes such conduct on one that cannot consent when he or she is "mentally disabled or deficient." I .C. § 35-42-4-2(a)(3). Especially in light of clause (3), the unifying theme to the separate situations of proscribed conduct is that in none of those situations can a victim give voluntary consent to the act. Hence, our focus in addressing whether a victim was "unaware" involves looking at the facts favorable to the verdict to determine if the victim was capable of voluntarily giving consent to the actor.

*Id*. at 403.

[14] Similar to the criminal deviate conduct statute at issue in *Nolan*, the statute under which Frye is charged states:

> [A] person who knowingly or intentionally has sexual intercourse with another person or knowingly or intentionally causes another person to perform or submit to other sexual conduct . . . when:
>
> > (1) the other person is compelled by force or imminent threat of force;

> (2) the other person is unaware that the sexual intercourse or other sexual conduct . . . is occurring;
>
> (3) the other person is so mentally disabled or deficient that consent to sexual intercourse or other sexual conduct . . . cannot be given; or
>
> (4) the person disregarded the other person's attempts to physically, verbally, or by other visible conduct refuse the person's acts;
>
> commits rape, a Level 3 felony.

Ind. Code § 35-42-4-1(a).

[15] Given the similar statutory construction, we follow *Nolan* and hold the ability to consent is a "unifying theme to the separate situations of proscribed conduct" constituting Level 3 felony rape. *Nolan*, 863 N.E.2d at 403. Moreover, "whether a victim was 'unaware' involves looking at the facts . . . to determine if the victim was capable of voluntarily giving consent to the actor." *Id*. Thus, Frye should be able to ask AV questions about their shared sexual history to determine whether there is any basis by which he could defend himself from the charge against him by arguing the alleged acts of January 6, 2023, were consensual.

[16] Frye does not yet know what his defense to the criminal charge will be and he has been unable to conduct discovery. Although most information about a victim's sexual history is, and certainly ought to be, inadmissible under our

Rape Shield provisions, it is possible that details of AV's prior sexual relationship with Frye may be relevant to the charge against Frye. *See, e.g.*, Ind. Code § 35-37-4-4 (b)(1) (evidence of the "victim's . . . past sexual conduct with the defendant . . . may be introduced if the judge finds . . . that it is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value"). To prohibit Frye from asking AV any questions about their prior shared sexual relationship is tantamount to allowing the State to use our Rape Shield provisions "both as a shield and a sword." *Steward v. State*, 636 N.E.2d 143, 150 (Ind. Ct. App. 1994), *aff'd on trans. Steward v. State*, 652 N.E.2d 490 (Ind. 1995), *reh'g denied*. Frye must be permitted to ask AV questions – limited exclusively to their shared sexual relationship – to determine whether any form of consent defense is available to Frye. *See* Evid. R. 412(b)(1)(B) (rendering admissible "specific instances of a victim's . . . sexual behavior with respect to the [defendant] . . . to prove consent"). We therefore conclude the trial court abused its discretion when it issued a protective order prohibiting Frye from asking AV questions about their shared sexual history.[5]

---

[5] The trial court's order implicitly relies on the unavailability of the defense of advance consent to grant the State's motion for a protective order. As Frye does not yet know what his defense will be because he has not yet been able to depose AV, any question about the legal viability of the defense of advance consent is not yet ripe. We therefore decline to address it.

## Conclusion

The trial court abused its discretion when it granted the State's protective order to prohibit Frye from asking AV about their shared sexual history. We therefore reverse and remand for proceedings consistent with this opinion.

Reversed and Remanded.

Brown, J., and Shepard, S.J., concur.

ATTORNEY FOR APPELLANT

Andrew Bernlohr
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana