

**FILED**
Apr 10 2015, 10:05 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Alex R. Voils, Jr.
Zionsville, Indiana

ATTORNEYS FOR APPELLEES

Thomas R. Schultz
Charles S. Smith
Justin C. Wiler
Schultz & Pogue, LLP
Indianapolis, Indiana

James D. Crum
Brandi A. Gibson
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

M. Shane Faulkinbury, by his
next friends/guardians John M.
Faulkinbury and Olivia J.
Faulkinbury,

*Appellant-Plaintiff/Counterclaim-Defendant,*

v.

Michael Broshears and BAM
Outdoor, Inc.,

*Appellees-Defendants/Counterclaim-Plaintiffs.*

April 10, 2015

Court of Appeals Case No.
29A05-1405-CT-234

Appeal from the
Hamilton Superior Court

The Honorable Steven R. Nation,
Judge

Cause No. 29D01-0705-CT-589

**Kirsch, Judge.**

[1] M. Shane Faulkinbury ("Shane"), by his next friends/guardians, his parents, John M. Faulkinbury ("Father") and Olivia J. Faulkinbury ("Mother") (collectively, "Guardians"), appeal the trial court's: (1) grant of summary judgment in favor of Michael Broshears ("Michael") and BAM Outdoor, Inc. (together, "BAM") on Guardians' tort claim against BAM; (2) grant of summary judgment in favor of BAM on its counterclaim against Guardians; (3) award to BAM of damages, attorney fees, and expenses in the total amount of $46,711.47; and (4) denial of Guardians' motion to correct error based on newly discovered evidence. On appeal, we address the one dispositive issue: Whether the trial court erred in denying Guardians' motion to correct error.

[2] We reverse and remand.

## Facts and Procedural History

[3] This case arises from a June 1, 2005 car accident between Shane and Michael, which occurred at the intersection of Hazel Dell Parkway and 146th Street in Hamilton County, Indiana. At the time of the accident, Michael was the President and sole owner of BAM Outdoor, Inc. and was driving a truck owned by that company. The parties agree that Michael's truck was in front of Shane's car after the two vehicles had stopped for a red light. They also agree that the two vehicles collided. The parties disagree, however, about the events surrounding that collision. Guardians claimed that Michael backed his truck into Shane's car and, after the two men exited their vehicles, Michael hit Shane from behind with an object similar to a two-by-four, injuring Shane's head and shoulders. Michael claimed that Shane's car hit Michael's truck from behind

and, after the two men exited their vehicles, Shane punched Michael in the face.

[4]     At some point after the accident, Shane became incapacitated and his parents were appointed as his guardians in September 2006. *Appellant's App.* at 36. On May 30, 2007, on Shane's behalf, Guardians filed a complaint against BAM ("tort claim") alleging that Michael committed the torts of battery by vehicle, battery on Shane's person, trespass to chattel, and mischief. *Id.* at 51-52. BAM filed an answer to the complaint and included a counterclaim ("counterclaim"), alleging the same torts raised by Guardians, but asserting that Michael was the one who suffered injuries after Shane drove into Michael's truck, got out of his car, and punched Michael in the face. BAM included in the counterclaim the allegation that Guardians' tort claim was "groundless or otherwise frivolous" and was being litigated in bad faith. *Id*. at 68. Accordingly, BAM requested reasonable attorney fees for defending the frivolous suit. *Id*. Guardians answered BAM's counterclaim, denying each allegation.

[5]     In 2011, BAM filed a motion for summary judgment as to Guardians' tort claim.[1] In support of the motion for summary judgment, BAM designated: (1) an affidavit sworn by Michael; and (2) a portion of witness Courtney Luschinski's ("Luschinski") June 27, 2011 deposition, which was taken six

---

[1] The numerous docketed events that occurred in the intervening three-and-a-half years included, among other filings, motions to compel discovery, motions for extension of time and continuances, Guardians' motion for a protective order, motions for enlargement of time, BAM's motion for rule to show cause, and BAM's motion to compel and/or motion to dismiss.

years after the incident. In his affidavit, Michael stated that he had not hit Shane; instead, Shane's car hit Michael's truck, and thereafter, Shane "punched [Michael] in the face." *Id.* at 88. In the designated portion of Luschinski's deposition, pages 1-4 and 9-12, she testified that she was the driver of the car behind Shane's on the night in question and witnessed some of the altercation between Shane and Michael. Luschinski said that she did not witness the actual collision of the vehicles, nor did she see Michael hit Shane. *Id*. at 91. Luschinski stated, "I saw the guy [Shane] get out of the—the red car and then I saw Mike get out of his truck." *Id*. The "guy in the red car seemed to be stumbling and then just started hitting Mike." *Id*. "It looked like [Shane punched him] in the face." *Id*.

[6] Guardians responded to BAM's motion for summary judgment for the tort claim and attached to their response: (1) an affidavit sworn by Father on October 7, 2011 (also referred to as "Exhibit 1" or "Father's 2011 affidavit"); (2) a different portion of witness Luschinski's deposition, pages 13-20; and (3) a photograph of Shane, purportedly taken soon after the altercation (also referred to as "Exhibit 3"). *Id.* at 92-102.

[7] In Father's 2011 affidavit, he related:

> 4. M. Shane Faulkinbury has steadfastly stated, in detail before he lost his communicative skills, that on June 1, 2005, a person later identified as Michael Broshears pulled his vehicle around [Shane's] vehicle just prior to the intersection of Hazel Dell Parkway and 146th Street in Hamilton County, Indiana. After "passing" Shane's red [E]scort and while stopped at the intersection Michael Broshears backed his vehicle into Shane's Escort. That during the interaction between the parties

which followed Michael Broshears operating his vehicle in such a manner[,] Michael Broshears struck Shane with an object likened to a "2x4."

5. Michael Broshears was involved in a relationship with Shane's estranged wife, Kelly Faulkinbury. In the period of time surrounding said incident Shane and his estranged wife were involved in litigation regarding custody of their minor child.

6. The injuries suffered by Shane on June 1, 2005 are inconsistent with any which may have resulted from the contact of the two vehicles. The air bag was not deployed. The damage to Shane's red Escort was minimal. Repair to the vehicle was not required.

*Id.* at 98. In her deposition, Luschinski said that Michael recognized her at the scene and asked if she had seen the accident. Luschinski told Michael that she had not seen the accident but had seen the physical altercation. *Id.* at 100. When asked if she had spoken with the police on that evening, Luschinski said no; she explained that she had asked Michael if she needed to stick around to talk to the police, and when Michael said no, she left. *Id.* Luschinski witnessed everything from inside her car, where she remained during the whole incident. *Id.*

[8] On October 12, 2011, the trial court held a hearing on BAM's motion for summary judgment as to the tort claim. At the beginning of the hearing, BAM hand-filed a motion to strike Exhibits 1 and 3. Regarding Exhibit 1, BAM argued that Father's 2011 affidavit was based on hearsay and portions of the affidavit constituted impermissible expert testimony. *Tr.* at 92-94. As to Exhibit 3, BAM maintained that the photo of Shane was not authenticated. *Id.* at 94-95. The trial court granted BAM's motion to strike Exhibits 1 and 3 and, thereafter, granted BAM's motion for summary judgment on the tort claim.

[9] On August 16, 2012, BAM filed a motion for summary judgment in connection with its counterclaim and designated the following evidence in support thereof: (1) Michael's affidavit stating that it was he who had been injured by Shane; (2) a portion of Luschinski's deposition;[2] and (3) a letter from BAM's attorney, Brandi Gibson, stating that she had reviewed Shane's medical records and found no evidence that his injuries were connected to the accident; this letter suggested that Guardians' tort claim was frivolous. *Appellant's App.* at 109-19.

[10] The trial court granted Guardians' two motions for extension of time; accordingly, Guardians' response was due on November 21, 2012. *Id.* at 16. On that day, Guardians faxed to the Hamilton Superior Court, an eighteen-page document, which included Guardians' response to BAM's motion for summary judgment on its counterclaim. As part of the response, Guardians designated the following evidence: (1) an affidavit of Father, dated November 19, 2012; (2) an affidavit of Dr. Mark J. Janicki, Shane's treating physician; (3) a portion of Luschinski's deposition; and (4) a "Book-in Photo of M. Shane Faulkinbury." *Id.* at 143-44, 148-59. The response was file-stamped by the Hamilton Superior Court with the date of "11/26/2012." *Id.* at 17, 131. BAM filed a motion to strike Guardians' response, arguing that it was untimely filed. On February 22, 2013, the trial court granted BAM's motion to strike Guardians' response as untimely, citing Hamilton County Local Administrative

---

[2] It is interesting to note that BAM designated the exact same pages of Luschinski's deposition and almost identical affidavits for Michael in connection with each motion for summary judgment—tort claim and counterclaim. *Appellant's App*. at 87-91, 112-16

Rule 12's requirement that a faxed transmission may not exceed ten pages in length including the cover sheet and proposed CCS entry. *Id.* at 199.

[11] Having struck Guardians' response, BAM's motion for summary judgment on its counterclaim was the only filing before the trial court. Finding no genuine issue of material fact, on August 21, 2013, the trial court granted BAM's motion for summary judgment on its counterclaim and claim that the suit was frivolous. Following a November 15, 2013 hearing on the issue of damages, the trial court awarded BAM $1,500 for Michael's pain and suffering. *Id*. at 203. Regarding BAM's request for attorney fees and expenses, the trial court concluded that it had insufficient evidence to award attorney fees in the amount requested. *Id.* Nevertheless, "because there was confusion as to what should have been provided," the trial court allowed BAM to provide supplemental exhibits containing "a description of services provided, hours worked, and hourly rate for each paralegal and attorney." *Id*. at 204. BAM provided the supplemental exhibits, and the trial court ordered Guardians to pay attorney fees and expenses: (1) as it related to Charles Smith, in the total amount of $23,191.81; and (2) as it related to Brandi A. Gibson and James D. Crum, with the firm of Coots Henke and Wheeler, in the total amount of $22,019.66. *Id*. at 212. The final judgment was entered into the CCS on February 7, 2014.

[12] Guardians filed a motion to correct error pursuant to Indiana Trial Rule 59(A)(1), asserting newly discovered evidence, and attached thereto: (1) an affidavit from Shane's doctor, Dr. Mark Janicki; (2) an affidavit from Mother; and (3) an affidavit from Shane himself, who had recently recovered his

memory sufficiently to remember the incidents on the night in question. Guardians argued that Shane's affidavit, which contained newly discovered evidence, created a genuine issue of material fact sufficient for the trial court to vacate its grant of summary judgment on the tort claim and counterclaim and set the matter for trial. *Appellant's App*. at 29.

[13] In his affidavit, Dr. Janicki stated that he specialized in "Neurology and Internal Medicine," and that Shane had been a patient under his care since the fall of 2005. *Id.* at 32. Dr. Janicki's medical evaluation stated that the nature and aftereffects of Shane's head injury were consistent with Shane's claim that he suffered a blunt force trauma at the hands of Michael during the June 1, 2005 incident. *Id.* Shane's injuries "resulted in a progression to where his overall abilities, including but not limited to his communicative skills, seriously deteriorated to where he was debilitated," and unable to recall and meaningfully communicate the details of the June 2005 incident. *Id.* Dr. Janicki stated that Shane's "status has recently changed dramatically. He now is able to recall the events surrounding the June 2005 incident." *Id.* "While this healing has been a progression he has not been until recently *competent*." *Id.* at 33 (emphasis added).

[14] In her affidavit, Mother stated that she and Father were on vacation on June 1, 2005, and returned five days later to find Shane "in a sling and [he] had bruises on his head." *Id*. at 35. Mother did not immediately suspect brain damage but, about two weeks later, noted a problem with Shane's mental capacity. *Id*. Shane slept the majority of the time and made no sense when he spoke.

Through a referral, Shane's parents obtained the services of Dr. Janicki. *Id*. at 36. When Shane did not improve by September 2006, his parents were appointed Shane's guardians. In early 2013, Shane began to improve in stages. In September 2013, Shane had an appointment with Dr. Janicki, who concluded that Shane "still was not competent." *Id*. at 37. Six months later, at Shane's February 25, 2014 appointment, Dr. Janicki told Mother that Shane was competent. *Id*.

[15] In his affidavit, dated March 10, 2014, Shane stated that he had been married to Kelly Faulkinbury ("Kelly"), and together, they had one child who was born on April 21, 2001. *Id*. at 39. Shane swore that the June 1, 2005 attack resulted in his being mentally incapacitated for a very long time, but now he is "able to remember and reason." *Id*. The attack came in the course of Shane's divorce from Kelly. Shane had sought custody of his child, and the trial court ordered shared joint custody. In May 2005, Kelly contacted Shane and asked him to meet her at a bar so they could discuss their relationship. Kelly and Shane both drank alcohol, and on the way home, Shane was stopped by the police on a tip that he had been drinking and driving. *Id*. Shane was not drunk; his parents were called and took him home. Shane later told Kelly how the police had stopped him on his way home.

[16] Shane also swore in his affidavit that, on June 1, 2005, again at Kelly's request, he met Kelly "to discuss their relationship." *Id*. Kelly and Shane drank; thereafter, Shane travelled home via the same route. *Id*. at 39-40. As Shane approached the left-turn-lane at the intersection of Hazel Dell Parkway and

146th Street, a truck passed him on the right and cut in front of Shane. *Id*. at 40. A red light at the intersection required Shane to stop behind the truck. Immediately, the truck driver placed the vehicle in reverse and backed the truck into Shane's vehicle. *Id*. Shane was not hurt and got out of his vehicle, went to the "truck driver's side door," and saw a man on his cell phone. *Id*. The man ignored him. Shane did not recognize the man, but later learned that it was Michael, a man who was then involved in a relationship with Kelly. Shane returned to his car, and as he crouched down to look at the damage to his bumper, someone hit him hard from behind. Shane sustained injuries to his head, which left him dazed. The next thing Shane remembered, there was an ambulance at the scene and he was speaking with a police officer.

[17] Shane ended his affidavit, stating:

> 20. On June 16, 2005, Kelly Zinn Faulkinbury filed her verified Emergency Motion for Hearing on Change of Custody and Visitation, with her affidavit.
>
> 21. As I stated before[,] I did not know Michael Broshears when he backed his truck into my car. Nor was I aware that he was involved with Kelly Zinn Faulkinbury. Kelly and [my child] have and do live with Michael Broshears.

*Id.* at 40.

[18] BAM filed a response arguing: (1) "evidence obtained after entry of an order granting partial summary judgment cannot form the basis for vacating such an order"; (2) Guardians' "failure to designate evidence in response to counter-claim plaintiffs' motion for summary judgment precludes Mr. Faulkinbury from attempting to vacate that order on the grounds that he has newly discovered

evidence"; and (3) "Mr. Faulkinbury has not provided any evidence that he was ruled competent to testify by the court that established his guardianship. *Id*. at 41-42. Without holding a hearing or making findings, the trial court denied Guardians' motion to correct error in "Judge's Entry of April 29, 2014." *Id*. at 24. Guardians now appeal.

## Discussion and Decision

[19] On appeal, Guardians contend that the newly discovered evidence creates a genuine issue of material fact that precludes a grant of summary judgment in favor of BAM as to both the tort claim and the counterclaim. Additionally, this newly discovered evidence shows that Guardians' tort claim was not frivolous, and as such, the trial court erred in granting attorney fees to BAM upon such a finding. For this reason, Guardians argue that the trial court erred in denying their motion to correct error pursuant to Trial Rule 59(A)(1), in which they prayed for the trial court to vacate its orders in favor of BAM. *Appellant's App.* at 27. We need only address one dispositive issue, whether the trial court erred in denying Guardians' Trial Rule 59(A)(1) motion to correct error on the basis of newly discovered evidence.

[20] The Indiana Rules of Trial Procedure provide two related procedures for addressing material evidence that remains undiscovered until after trial. *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008). "Trial Rule 59(A)(1) permits a party to file a motion to correct error to address 'newly discovered material evidence . . . capable of production within thirty

(30) days of final judgment which, with reasonable diligence, could not have been discovered and produced at trial.'" *Id.* Similarly, and incorporating the requirements of Trial Rule 59(A)(1), Trial Rule 60(B)(2) permits a party to move for relief from judgment "on grounds of 'newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59.'" *Id.*

[21] Indiana courts have long received motions under Trial Rule 59(A)(1) with "great caution" because courts place "a high value on finality of judicial resolutions." *Id.* at 1271. The decision to grant a Trial Rule 59 motion to correct error on the basis of newly discovered evidence trial "is an equitable one, and requires the court to 'balance the alleged injustice suffered by the party moving for relief against the interest of the winning party and society in general in the finality of litigation.'" *Id.* (quoting *Estate of Lee ex rel. McGarrah v. Lee & Urbahns Co.*, 876 N.E.2d 361, 371 (Ind. Ct. App. 2007)).

[22] Here, the newly discovered evidence, Shane's recovery of his memory, was discovered within thirty days after the final order; therefore, Guardians filed a motion to correct error pursuant to Trial Rule 59(A)(1). We review a trial court's denial of a motion to correct error based on newly discovered evidence for an abuse of discretion. *Scales v. Scales*, 891 N.E.2d 1116, 1118 (Ind. Ct. App. 2008). The trial court's decision on a motion to correct error comes to us cloaked with a presumption of correctness, and the appellant has the burden of showing an abuse of discretion. *Cox v. Matthews*, 901 N.E.2d 14, 21 (Ind. Ct. App. 2009), *trans. dismissed*. An abuse of discretion will be found when the trial

court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. *Id.* Here, the trial court provided no reasoning for denying Guardians' motion to correct error. *Appellant's App.* at 24.

[23] Because Guardians' motion to correct error relied on the newly discovered evidence described in the three affidavits submitted therewith, we first address BAM's contention that the trial court could not have granted Guardians' motion to correct error on newly discovered evidence because it was precluded from considering the three affidavits attached to Guardians' motion. In support of its position, BAM cites to one case, *Mitchell v. 10th and the Bypass*, *LLC,* 3 N.E.3d 967 (Ind. 2014).

[24] In *Mitchell*, a commercial landlord, 10th and the Bypass ("LLC"), brought an environmental legal action against a dry cleaning businesses and its owner, Mitchell, alleging that defendants had caused or contributed to the release of a hazardous substance into the subsurface soil or groundwater. 3 N.E.3d at 969. Mitchell, individually, moved for partial summary judgment and designated an affidavit swearing that he had not caused or contributed to the release of a hazardous substance. LLC did not respond to Mitchell's motion for summary judgment; instead, LLC filed its own motion for summary judgment. Finding no evidence that Mitchell caused the spill, the trial court granted partial summary judgment in Mitchell's favor. *Id.* at 969-70.

About one year later, but prior to the order being final, Mitchell's employee swore an affidavit stating that she had seen Mitchell spill a hazardous substance at his place of business. Relying on this "newly discovered inculpatory evidence establish[ing] Mitchell's individual liability," and recognizing that the order was not final, LLC filed a motion pursuant to Indiana Trial Rule 54(B) to vacate the trial court's order granting partial summary judgment in Mitchell's favor and attached the employee's affidavit thereto. *Id*. at 970.[3] Mitchell did not refute the veracity of the allegations in the employee's affidavit; instead, he argued that the affidavit could not be considered because "pursuant to Trial Rule 56 newly discovered evidence must be properly designated and timely submitted—neither of which, according to Mitchell, was done in this case." *Id*.

The trial court held a hearing, considered the employee's affidavit, and noting that pursuant to Trial Rule 54(B) the non-final order could be revised at any time before becoming a final order, vacated its grant of partial summary judgment in Mitchell's favor. *Id*. Our court granted Mitchell's petition for interlocutory review and affirmed the judgment of the trial court.

On transfer, our Supreme Court reversed the trial court's decision to vacate its grant of partial summary judgment in favor of Mitchell. While agreeing with

---

[3] LLC also filed a motion for relief from judgment pursuant to Trial Rule 60(B) on the basis of newly discovered evidence, but the trial court declined to address that issue, finding that the partial summary judgment was not a final appealable order as was required under Trial Rule 60(B). As we later discuss, Trial Rule 60(B) was amended in 2008 to delete the word "final"; therefore, the rule now allows a court to relieve a party from judgment regardless of whether it is final. *Mitchell v. 10th and the Bypass*, LLC, 3 N.E.3d 967, 974 (Ind. 2014).

the trial court that the order granting partial summary judgment was not a final order, the Supreme Court disagreed with the trial court's conclusion that it could consider employee's affidavit as newly discovered evidence and vacate its original order. *Mitchell*, 3 N.E.3d at 971. To harmonize the application of both Trial Rule 54(B), pertaining to the modification of a non-final order, and Trial Rule 56(C), pertaining to evidence that may be considered on a motion for summary judgment, our Supreme Court concluded, "[A]lthough a trial court may indeed make material modifications to a non-final summary judgment order, it must do so based on the timely submitted materials already before the court when the order was initially entered." *Id*. at 973. Stated differently, our Supreme Court clarified, "[T]he 'subject to revision' language in Rule 54(B) permits a trial court to revise, modify, or vacate a non-final prior ruling; but where that non-final ruling was the grant or denial of a motion for summary judgment, the trial court may only consider the Rule 56 materials properly before it at the time the order was first entered." *Id*. at 973. "To hold otherwise would allow a party to avoid the strict timelines for designating evidence under Rule 56 . . . ." *Id*.

[28]  BAM contends that under our Supreme Court's reasoning in *Mitchell*, the trial court was precluded from looking at Guardians' three affidavits containing the newly discovered evidence. We disagree.

[29]  In *Mitchell*, the trial court was asked to modify a *non-final order*. By contrast, here, the trial court was asked to grant a motion to correct error from a *final judgment*. Unlike Trial Rule 54(B), which does not contemplate that a trial

court will use newly discovered evidence to modify its order, Trial Rule 59(A)(1) specifically allows a party to file a motion to correct error on the basis of evidence newly discovered within thirty days of final judgment. *Mitchell* does not preclude a trial court from considering affidavits submitted as newly discovered evidence in connection with a Trial Rule 59(A)(1) motion to correct error. We find it was within the trial court's power to review and consider the three affidavits submitted with Guardians' motion to correct error.

[30] Our conclusion that the trial court could have considered Guardians' three affidavits as newly discovered evidence is supported by the *Mitchell* Court's discussion of Trial Rule 60(B). Upon obtaining a sworn affidavit from Mitchell's employee that Mitchell had spilled hazardous material at his place of business, LLC moved both: (1) to modify the non-final order granting partial summary judgment in favor of Mitchell pursuant to Trial Rule 54(B); and (2) to vacate the non-final grant of partial summary judgment on the basis of newly discovered evidence pursuant to Trial Rule 60(B). The trial court addressed the issue pertaining to Trial Rule 54(B), but, concluding that Trial Rule 60(B) review was applicable only to final judgments, declined to address that issue on its merits. *Id*. at 973.

[31] On transfer, our Supreme Court noted that a 2008 amendment to Rule 60(B) now allows a court to relieve a party from judgment on the basis of newly discovered evidence regardless of whether the judgment was final. *Id.* at 974. Finding that the trial court erred in declining to address the newly discovered evidence under Trial Rule 60(B), the *Mitchell* Court remanded the case for such

consideration. Observing that Trial Rules 59(A)(1) and 60(B) are related procedures for addressing material evidence that remains undiscovered until after trial, and following *Mitchell*'s guidance, we conclude that the three affidavits were available to the trial court in its consideration of Guardians' motion to correct error.

[32]  Recognizing that the three affidavits were available for the trial court's review of Guardians' motion to correct error, we now turn to Guardians' claim that the trial court abused its discretion when it denied their request to vacate the trial court's order on the basis of newly discovered evidence. As part of the final order, the trial court granted summary judgment in favor of BAM on both the tort claim and the counterclaim. The party seeking summary judgment bears the burden of showing there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Regalado v. Estate of Regalado*, 933 N.E.2d 512, 519 (Ind. Ct. App. 2010). BAM moved for summary judgment as to both the claim and counterclaim. Accordingly, BAM bore the burden of proving there was no genuine issue of material fact.

[33]  Pursuant to Indiana Trial Rule 56, affidavits supporting or opposing summary judgment must: be made on personal knowledge; affirmatively show that the affiant is competent to testify on the matter stated in the affidavit; contain admissible evidence; and set forth only facts as are admissible in evidence. Ind. Trial Rule 56(E). Guardians argue that a major factor in the trial court's grant of summary judgment in favor of BAM was "Shane Faulkinbury's incompetence to testify and the reliance on hearsay." *Appellant's Br.* at 10.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Breining v. Harkness*, 872 N.E.2d 155, 158 (Ind. Ct. App. 2007), *trans. denied*. In the absence of Shane's affidavit, which described the events on the night of June 1, 2005, Guardians could produce no evidence to create a genuine issue of material fact. Guardians argue that Shane's regained competence is newly discovered evidence sufficient to withstand BAM's motion for summary judgment.

[34] New evidence requires the trial court to grant a Trial Rule 59 motion to correct error only when the party seeking relief demonstrates that:

> (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

*Id*.

[35] The evidence that Guardians assert as newly discovered evidence is contained in the affidavits of Dr. Janicki, Mother, and Shane. In Dr. Janicki's March 7, 2014 affidavit, he stated that he specialized in Neurology and Internal Medicine. Shane had been under Dr. Janicki's care since the fall of 2005 for the treatment of injuries including, but not limited to, traumatic brain injury. *Id*. at 32. In his uncontested affidavit, Dr. Janicki stated that the nature of Shane's head injury and the symptoms were consistent with Shane having suffered a "blunt force injury." *Id*. Shane is now "able to recall the events surrounding

the June 2005 incident. He has significantly healed to where he can now discern between the truth and a falsehood." *Id*. at 32-33. Shane's "present state of competence while previously unforeseeable has occurred but recently." *Id*. at 33.

[36] Mother swore an affidavit on March 10, 2014, stating that she was away on June 5, 2005, but that when she returned home she found Shane "in a sling" and bruises on his head. *Id*. at 35. Mother did not suspect a brain injury at first, but less than two weeks later, she noticed "a problem with his mental capacity." *Id*. Through a referral, Mother obtained the services of Dr. Janicki. *Id*. at 36. Shane was previously incompetent, and the improvements in his mental capacity were slow and gradual. *Id*. In September 2013, Shane had an appointment with Dr. Janicki, who concluded that Shane "still was not competent." *Id*. at 37. Six months later, at Shane's February 25, 2014 appointment, Dr. Janicki confirmed Mother's belief that Shane had reached a new plateau where he could remember and reason, and "he seemed to know the difference between the truth and a lie." *Id*. at 37.

[37] In Shane's uncontested affidavit, dated March 10, 2014, he swears that he now remembers that he was struck by Michael on June 1, 2005, and was injured to the point that he was mentally incompetent. On the night in question, Shane was stopping at a red light at the intersection of Hazel Dell Parkway and 146th Street when a truck passed him on the right and pulled in front of Shane. *Appellant's App.* at 40. As soon as the vehicles stopped for the light, the driver of the truck, a man Shane later learned was Michael, backed up and hit Shane's

vehicle. *Id*. Shane got out of his car and was checking the vehicle for damage when he was hit from behind by an object similar to a two-by-four. *Id*. Shane passed out. *Id*. At that time, unbeknownst to Shane, Michael was dating Kelly, Shane's ex-wife, and Shane and Kelly were fighting over the custody of their child. *Id*. About two weeks after the incident, Kelly filed an emergency motion for a hearing on a change of custody and visitation. *Id*.

[38] This evidence was relevant and material and was not cumulative of any other admissible evidence. Likewise, this was not merely impeaching evidence. Shane's affidavit was the first personal, admissible affidavit that supported his version of the events on the night in question. Additionally, as set forth in the affidavits of Dr. Janicki and Mother, Shane's mental state had prevented this evidence from being discovered until after the trial court entered its order; no amount of due diligence could have allowed Shane to swear the affidavit any sooner than he did. Furthermore, Dr. Janicki swore in his affidavit that Shane is now competent.[4] In the absence of the trial court having made a determination that Shane is incompetent to testify, Shane's affidavit is uncontested and worthy of credit, and at trial, he will have the opportunity to

---

[4] In BAM's response to Guardians' motion to correct error, BAM maintained, without citing to authority, that Shane is not competent to testify because he is under a guardianship and has "failed to tender any evidence that the court with authority over his guardianship had made any determination with respect to his competence . . . ." *Appellant's App.* at 45. A person subject to a guardianship is not per se incompetent to testify. In *Yanoff v. Muncy*, 688 N.E.2d 1259 (Ind. 1997), the plaintiff had been adjudged "incompetent to handle his financial and personal affairs." *Id*. at 1261. Nevertheless, the Indiana Supreme Court observed that "an adjudication of inability to manage [the witness's] affairs does not necessarily render the witness incompetent [to testify]." *Id*. at 1261 n.1.

testify as to his version of the events. The factfinder will have the opportunity to weigh the evidence and judge Shane's credibility. In light of this newly discovered evidence, we believe that Shane should have his day in court. Considering the above factors, we find that the trial court abused its discretion in denying Guardians' motion to correct error.

Reversed and remanded.

Friedlander, J., and Crone, J., concur.