

I N  T H E

# Indiana Supreme Court

Supreme Court Case No. 24S-CT-186

## Charles Jennings
*Appellant (Plaintiff below)*



FILED

Jan 24 2025, 10:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## Jessica A. Smiley and Progressive Southeastern Insurance Co.
*Appellees (Defendants below)*

---

Argued: June 20, 2024 | Decided: January 24, 2025

Appeal from the Hamilton Superior Court
No. 29D01-2002-CT-1487
The Honorable Michael A. Casati, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 23A-CT-303

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices Massa and Slaughter concur.

Justice Molter dissents with separate opinion.

**Goff, Justice.**

To assist in trial preparation, our rules of discovery are designed to enhance the availability of information to both parties. At the same time, our discovery rules contain certain limiting principles aimed at curbing information overreach and the potential for abuse. These limiting principles—including restrictions based on relevance, burden, expense, embarrassment, privilege, and proportionality—implicate the value of protecting a party's privacy interests. The discovery request here, access to a party's smartphone device, presents a unique challenge to balancing these privacy interests against the disclosure of information.

In resolving this issue of first impression, we hold that the party seeking production of a smartphone must provide *some* evidence of the device's use at a time when it could have been a contributing cause of the incident litigated and must describe the data sought with reasonable particularity. In so holding, we stress three things: (1) that, unlike certain privileged information exempt from disclosure, privacy concerns are not a per se bar to discovery of relevant information; (2) that the "some evidence" standard poses a relatively low burden on the requesting party, leading to disclosure in most cases when that party makes the required showing through sources obtained by less-invasive means; and (3) that, given the highly deferential standard of review, we will affirm a trial court's discovery ruling so long as it's sustainable on any legal basis in the record.

Based on the record here, we hold that, because the plaintiff's discovery request lacks the necessary evidentiary support and because it casts too wide a net, the trial court did not abuse its discretion by denying plaintiff's motion to compel. Accordingly, we affirm.

## Facts and Procedural History

While traveling northbound on Westfield Boulevard in Carmel during rush hour, motorist Jessica Smiley (the Defendant) struck and injured a pedestrian, Charles Jennings (the Plaintiff). Defendant claimed that Plaintiff stepped out from behind a large box truck traveling in the

opposite direction, obstructing her view and preventing her from stopping until it was too late. Witnesses at the scene corroborated these events. And investigating officers determined that the Plaintiff had not crossed at an intersection; that there were no crosswalk signs, yield signs, stop signs, or pedestrian-crossing signs in the immediate vicinity; and that there was no evidence of Defendant speeding, driving recklessly, or having been distracted. Plaintiff later sued Defendant and her insurer for negligence. Defendant responded by raising a contributory-negligence defense.

During the early stages of discovery, Plaintiff subpoenaed Defendant's cellphone provider (Verizon), records from which revealed that Defendant had *not* been talking or texting at the time of the accident.[1] Defendant also permitted Plaintiff's expert to physically inspect and download data from her car's "black box," which likewise revealed nothing of consequence. Tr. Vol. 2, p. 7; App. Vol. 2, p. 30. Plaintiff later sought access to Defendant's iPhone "for purposes of extracting, without modifying, data reflecting the utilization of the subject phone" on the date of the accident. App. Vol. 2, p. 39. The Defendant objected, and the Plaintiff moved to compel production, citing several things in support of the discovery request: his reconstruction expert's report that Defendant was "inattentive and/or distracted" at the time of the collision, the Defendant's deposition testimony that she had used a navigation app earlier in the day, and Defendant's deposition testimony that she had "looked up" just before the accident. *Id.* at 30–32, 42.

At the ensuing motion-to-compel hearing, Plaintiff offered to "enter into any kind of reasonable protective order" to ensure the Defendant's privacy interests and to meet opposing counsel "at a place and a time" to supervise the data downloaded "for a one-hour period." Tr. Vol. 2, p. 7. The trial court initially ruled in Plaintiff's favor, directing Defendant to

---

[1] There is some dispute over whether the Verizon records included text-message records. *Compare* Oral Argument at 8:59–9:02 (Plaintiff's counsel suggesting that the Verizon records included talk-and-text records), *with* Oral Argument at 21:09–21:13 (Defendant's counsel insisting that the opposing party "only had talk information").

"make her phone available for inspection by Plaintiff's Expert" to assess the phone's use "from 5 p.m. to 6 p.m." on the date of the accident. App. Vol. 2, p. 47. The order also instructed Plaintiff's expert "to redact any personal information from any data generated from the inspection before providing that data to counsel for Plaintiff." *Id.*

Defendant then moved the court to reconsider its order, arguing that Plaintiff's motion to compel raised "significant privacy concerns" and implicated issues related to the "scope of discovery that are not routine," especially given the lack of evidence to suggest she was using her phone at the time of the accident. *Id.* at 49. The evidence in fact showed the contrary, Defendant submitted, pointing to the Verizon records, her testimony to having closed the navigation app before driving, and the testimony from two investigating officers who had no reason to believe Defendant was on her phone at the time of the accident.

Having considered these arguments in light of "Defendant's legitimate privacy concerns," the trial court reversed its original determination and denied Plaintiff's motion to compel. *Id.* at 61. From this ruling, the court granted Defendant's motion in limine, barring any discussion at trial of Defendant's objection to producing her cell phone for inspection and of its "decision to grant an Order denying [the] Motion to Compel." *Id.* at 63. At the conclusion of trial, a jury returned a verdict assigning ninety percent fault to Plaintiff and ten percent fault to Defendant, thus barring Plaintiff from recovering under Indiana's contributory-fault standard. *See* Ind. Code § 34-51-2-6.

The Court of Appeals affirmed in a unanimous opinion, holding that, absent "sufficient indicators" of Defendant's cell-phone use at the time of the accident, "the burden" of Plaintiff's "proposed telephone inspection outweighs its likely benefit in light of [Defendant's] significant privacy concerns." *Jennings v. Smiley*, 224 N.E.3d 996, 999–1000 (Ind. Ct. App. 2023) (citing Ind. Trial Rule 26(B)(1)). In so holding, the panel rejected out-of-state precedent cited by the Plaintiff as both inapt and "unnecessary" to "craft a framework for such discovery requests" when Trial Rule 26(B) sufficed. *Id.* at 1000.

Plaintiff petitioned for transfer, which we granted, thus vacating the Court of Appeals' decision. *See* Ind. Appellate Rule 58(A).

## Standards of Review

A trial court's ruling on a motion to compel discovery generally enjoys "wide discretionary latitude" on appeal. *Armstrong v. State*, 499 N.E.2d 189, 191 (Ind. 1986); *see also Minges v. State*, 192 N.E.3d 893, 896 (Ind. 2022) (stressing that trial courts enjoy "broad discretion on issues of discovery"). Given the trial court's ability to "weigh the evidence and assess witness credibility," we apply an abuse-of-discretion standard of review, interfering only if the ruling is "clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015) (internal citation and quotation marks omitted). We will affirm if the ruling is "sustainable on any legal basis in the record, even though this was not the reason enunciated by the trial court." *Estate of Lee ex rel. McGarrah v. Lee & Urbahns Co.*, 876 N.E.2d 361, 367 (Ind. Ct. App. 2007) (internal citation and quotation marks omitted). This deferential standard gives way to de novo review when it comes to interpreting our trial rules. *See Minges*, 192 N.E.3d at 896.

## Discussion and Decision

At its core, this case requires us to confront a tension inherent in civil discovery: how to enhance the availability of information to both parties in preparation for trial while ensuring proper protection of their privacy interests.

The Plaintiff argues that the trial court erred by prohibiting him from inspecting the Defendant's iPhone and by enforcing the motion in limine. While acknowledging Defendant's privacy interests, he insists that he's "entitled to limited and targeted discovery" of the phone to resolve the "central issue" of whether Defendant was distracted in the moments before the accident. Appellant's Br. at 21, 22, 29. Defendant responds by arguing that, given the prior admission of pertinent data from her cell-phone records and her car's black box, "the requested discovery was

unduly cumulative and unnecessary." Joint Appellees' Br. at 13. What's more, she contends, the needs of the case fail to meet the "extraordinary burden that such an inspection would present," adding that the "incursion into [her] privacy interest and the potential for abuse of access to such information is far beyond what is called for in a typical personal injury case." *Id.* Finally, Defendant contends that any error by the trial court was harmless, given the overwhelming evidence in her favor.

Beyond these arguments, the parties offer competing theories on how to analyze the dispute before us. The Defendant argues that Trial Rule 26(B)(1) itself offers "sufficient guidance" when analyzing whether the burden of the proposed cell-phone inspection outweighs its likely benefit. Resp. to Pet. to Trans. (Progressive) at 7–8; Resp. to Pet. to Trans. (Smiley) at 5–6. The Plaintiff, for his part, acknowledges that our Trial Rules offer general guidance for discovery disputes but urges us to "craft a more precise, efficient and just rule of law." Reply in Support of Trans. at 4. In his view, cell-phone inspection requests turn on "a careful balancing of competing interests, not a privilege moored solely in privacy concerns that forecloses even targeted discovery." Appellant's Br. at 25. Discovery is permissible, he insists, so long as there's "specific evidence" of possible cellphone use and "adequate safeguards" in place to protect the opposing party's "legitimate privacy concerns." Pet. to Trans. at 10, 17–19.

With these arguments in mind, our discussion proceeds as follows: First, we trace the recent evolution of Trial Rule 26(B)(1), leading us to conclude that the potential for invasion of privacy is a "burden" courts should consider when determining the scope of discovery. In recognizing the unique privacy interests implicated by the modern-day smartphone, we then articulate a standard for analyzing discovery requests for the sensitive content contained in these devices. Finally, we apply this standard to the Plaintiff here and conclude that, because his discovery request lacks the necessary evidentiary support and because of its impermissible overbreadth, the trial court did not abuse its discretion by denying the motion to compel.

# I. Our discovery rules balance the tension between access to information and information overreach.

The rules of discovery have long played a "vital role in the preparation for trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). To that end, these rules aim to enhance the availability of information to both parties in anticipation of litigation and, thus, to "reduce the possibility of surprise at trial." *Minges*, 192 N.E.3d at 897. At the same time, experience shows that pretrial discovery entails "significant potential for abuse." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). And such "abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Id.* at 34–35. So, while designed to encourage "liberal discovery," *see Minges*, 192 N.E.3d at 897, our trial rules also contain certain limiting principles—principles aimed at balancing the tension between open access to information, on the one hand, and information overreach, on the other hand.

For example, to prevent an improper "fishing expedition," *Crawford v. State*, 948 N.E.2d 1165, 1168 (Ind. 2011) (internal citation and quotation marks omitted), a party seeking discovery must "describe each item and category with reasonable particularity," T.R. 34(B). Though the "party need not specify the information sought" when the "contents of the item are unknown or unknowable," that party must show "something more precise than 'give me everything related to the case.'" *In re WTHR-TV*, 693 N.E.2d 1, 8 (Ind. 1998). Our rules also protect against the disclosure of certain information. *Minges*, 192 N.E.3d at 898. Trial Rule 26(B)(3), for example, codifies the common-law doctrine under which an attorney's work product is deemed privileged and thus protected from disclosure. *Id.* (citing *Hickman*, 329 U.S. at 509–10). Finally, the trial court may, upon motion by "any party" and for "good cause shown," issue an order designed to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" that may result from a discovery request. T.R. 26(C).

These provisions, taken together, stand for the "general proposition" that "discovery should go forward, but, if challenged, a balance must be struck between the need for the information and the burden of supplying

it." *In re WTHR-TV*, 693 N.E.2d at 6. The means for achieving this balance is an issue we turn to first in resolving the dispute here.

## A. Rule 26(B)'s proportionality framework requires analysis of an opposing party's legitimate privacy concerns.

Before 2007, Trial Rule 26(B)(1) defined the scope of discovery broadly, giving the parties access to any information "relevant to the subject-matter involved in the pending action," so long as that information appeared "reasonably calculated to lead to the discovery of admissible evidence." T.R. 26(B)(1) (2006). The Rule carved out a narrow exception for matters deemed "privileged." *Id.* But, as a general rule, "[p]rivate matters were discoverable by default, even where the privacy interests were significant and the relevance only marginal." *See* Robert D. Keeling & Ray Mangum, *The Burden of Privacy in Discovery*, 105 Judicature 66, 67 (2021) (discussing the federal rule and "its state law analogues"). Trial Rule 26(C) was the only mechanism by which a party could seek relief from disclosure of confidential or private information, and only upon a showing of "good cause." T.R. 26(C).

In 2007, this Court amended Trial Rule 26 by adding the second paragraph to subdivision (B)(1). *See* Order Amending Rules of Trial Procedure, 94S00-0702-MS-49 (Ind. Sept. 10, 2007). Under the revised rule, a trial court may limit the scope of discovery if (among other things) "the burden or expense of the proposed discovery outweighs its likely benefit," considering "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Id.* Rather than characterizing relevant information as discoverable by default (with a narrow exception for "privileged" matters), Trial Rule 26(B)(1) now limits the scope of discovery to matters that are both relevant *and* proportional.

Though proportionality in discovery may often implicate financial considerations, an emerging consensus among courts and commentators

considers the invasion of privacy interests a "burden" to weigh against the "likely benefit" of discovery. Keeling & Mangum, *supra*, at 68; *see also* The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 69 (2018) (concluding that proportionality analysis requires consideration of financial burdens as well as "non-monetary costs," including the "invasion of privacy rights").

We find several reasons to join in this consensus.

To begin with, Indiana courts have interpreted Trial Rule 26(C) to "recognize a privacy interest." *McGarrah*, 876 N.E.2d at 369. That rule, as noted above, protects a party, upon a showing of "good cause," from the "annoyance, embarrassment, oppression, or undue burden or expense" associated with a discovery request. *Id.* at 367 (quoting T.R. 26(C)). Though it "contains no specific reference to privacy," Rule 26(C) implicates such an interest in its "broad purpose and language." *Id.* at 369 (quoting *Rhinehart*, 467 U.S. at 35 n.21). Trial Rule 26(B)(1), in turn, incorporates this privacy interest by reference, directing trial courts to limit discovery, if necessary, either on "its own initiative after reasonable notice or pursuant to a motion under Rule 26(C)." In other words, a court can address privacy issues as a threshold matter in determining the scope of discovery or in response to a party's request for a protective order under Trial Rule 26(C).

Beyond the text of Rule 26(B)(1), modern advances in technology—and the accompanying concerns over the security of personal information— further compel us to recognize privacy interests as an integral part of the proportionality analysis.[2] *See Sedona Principles*, *supra*, at 68–69; *cf. Minges*, 192 N.E.3d at 895, 900, 901 (citing technological advances, along with Trial Rule 26(B)(1)'s proportionality analysis, to reinterpret the scope of

---

[2] Notably, the same year it amended Trial Rule 26(B)(1), the Court added subdivision (C)(9), under which "a party need not" under certain circumstances "provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." *See* Order Amending Rules of Trial Procedure, 94S00-0702-MS-49 (Ind. Sept. 10, 2007).

discovery under the work-product doctrine). Smartphones, especially, present a unique challenge to protecting this information. These devices, ubiquitous in modern society, paint a "detailed mosaic of one's personal life." Agnieszka A. McPeak, *Social Media, Smartphones, and Proportional Privacy in Civil Discovery*, 64 Kan. L. Rev. 235, 286 (2015). Unlike the limited data found in talk-and-text records or a car's black box, *see post*, at 1, the voluminous data extracted from a smartphone—through its GPS-tracking system and countless software applications—can reveal a "precise, comprehensive record of a person's public movements" and a "wealth of detail about her familial, political, professional, religious, and sexual associations," *Riley v. California*, 573 U.S. 373, 396 (2014) (quoting *United States v. Jones*, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring)). Indeed, the contents of a smartphone can reveal "far *more* than the most exhaustive search of a house." *Riley*, 573 U.S. at 396. And when these data exchange hands during the discovery process, the potential for breaches or leaks—intentional or not—increases, irrevocably exposing sensitive information to unintended third parties or the public at large. Keeling & Mangum, *supra*, at 73; *see also* William G. Childs, *When the Bell Can't Be Unrung: Document Leaks and Protective Orders in Mass Tort Litigation*, 27 Rev. Litig. 565, 567 (2008) (stressing that "new technologies have dramatically increased" the potential for "leaked confidential documents").

Given the sheer breadth of information contained in the modern smartphone, we recognize the potential for information overreach when parties seek access to these devices. The standard for balancing this concern for privacy against an otherwise "liberal discovery" process is an issue we turn to next.

## B. Civil discovery requests for smartphone access call for careful analysis of several factors.

The litigants here have asked us to articulate a measured way in which a party may access an opposing party's smartphone in the context of a civil-discovery request. To resolve this issue of first impression, and to assist us in developing guidance for trial courts, we turn to decisions from

other jurisdictions. *Cf. Bridgestone Ams. Holding, Inc. v. Mayberry*, 878 N.E.2d 189, 191–93 (Ind. 2007) (surveying state and federal precedent in developing an "analysis the trial court must follow when one party seeks discovery of a trade secret"); *Terre Haute Reg'l Hosp., Inc. v. Trueblood*, 600 N.E.2d 1358, 1360 (Ind. 1992) (considering the "law of other jurisdictions" in balancing the "competing interests" of the "scope of discovery and the physician-patient privilege").

In *Crabtree v. Angie's List, Inc.*, plaintiffs sued their employer for the wrongful denial of overtime compensation during a one-year period. No. 1:16-cv-00877-SEB-MJD, 2017 WL 413242, at *1 (S.D. Ind. Jan. 31, 2017). The employer-defendant, in response, moved to compel discovery, seeking GPS and location-services data, email messages, text messages, and other digital communications from the plaintiffs' personal cell phones to "construct a detailed and accurate timeline of when [they] were or were not working." *Id.* at *1, *4. Plaintiffs objected on grounds that the request posed "significant privacy concerns." *Id.* at *1. What's more, they stressed, the GPS data would fail to "accurately portray whether [they] were working at any given time," the defendant had "alternative, and far less intrusive, means to identify periods of time when Plaintiffs were working," and the request amounted to a "fishing expedition" not relevant to the claims or defenses in the case. *Id.* at *1, *4.

The U.S. District Court for the Southern District of Indiana, in an opinion by Magistrate Judge Mark Dinsmore, denied the defendant's motion, noting the intrusiveness of collecting "all GPS/location data for 24-hours a day for a one year period from a personal device that would be tracking Plaintiffs' movements well outside of their working time." *Id.* at *2. The court further opined that the defendant, in its demand for emails and text messages, cast "too wide a net" without "sufficiently justify[ing] the breadth of the request." *Id.* at *5. Ultimately, the court concluded that the defendant failed to show that the "GPS/location services data from Plaintiffs' electronic devices [would] be more probative" than the phone records the defendant already possessed. *Id.* at *3. So, under Federal Rule of Civil Procedure 26(b)(1), the court concluded, the "forensic examination of Plaintiffs' electronic devices [was] not proportional to the needs of the case because any benefit the data might provide [was] outweighed by

Plaintiffs' significant privacy and confidentiality interests."[3] *Id.* (citation omitted).

In a more recent case, *Estate of Logan v. City of South Bend*, the U.S. District Court for the Northern District of Indiana, in an opinion by Magistrate Judge Michael Gotsch, reached a similar conclusion. No. 3:19-CV-495-DRL-MGG, 2021 WL 389412, at *5 (N.D. Ind. Feb. 3, 2021). That case arose as a constitutional claim based on a police officer's alleged use of excessive and deadly force. *Id.* at *1. The plaintiff requested the production and forensic inspection of the defendant-officer's cell phones, both "personal and city-issued." *Id.* The defendant objected, arguing that, absent "any explanation to justify" the request, "the inspection would be unduly intrusive." *Id.* The plaintiff then moved to compel production, contending that, because the cost of inspection to the defendant would be negligible and because the forensic examiner would conduct the examination in the presence of the defendant and his lawyer, its request posed "only a minor burden and [was] clearly proportional to the needs of the case." *Id.* at *3. The district court disagreed. The plaintiff did "not provide sufficient information as to how the cell phone information is relevant or why it goes to the heart of the case," the court explained, "leaving [it] unable to ascertain whether a forensic examination of [the officer's] cell phone—even limited to the time of his shift on the date of the incident—is proportional enough to justify invading [the officer's] privacy interests." *Id.* at *4. What's more, the court opined, because the defendant had already produced cellphone records for the day of the incident, and because plaintiff failed to "identify the information it hope[d] to attain from the inspection," or how any data extracted would aid in resolving

---

[3] Though Federal Rule of Civil Procedure 26(b)(1) contains structural and textual elements not found in Indiana Trial Rule 26(B)(1), both rules set forth similar factors for analyzing proportionality in discovery. And because the Indiana rule generally "is patterned after" its federal counterpart, "authorities on the latter are relevant" to our discussion. *Rembold Motors, Inc. v. Bonfield*, 293 N.E.2d 210, 220 (Ind. Ct. App. 1973) (referring to Trial Rule 26(B)(1) specifically).

the case, any "benefit" of production was "outweighed by the Defendant's privacy and confidentiality interests." *Id.* at *5.

Beyond these cases, we find especially helpful the guidance articulated by the Texas Supreme Court in *In re Kuraray America, Inc.* The defendant in that case, the owner and operator of an ethylene plant, stood accused of negligence for injuries sustained by several workers following a chemical release from one of the plant's reactors. 656 S.W.3d 137, 139–40 (Tex. 2022). Citing "cell phone usage and abuse" by several employees responsible for monitoring the reactor as "a potential cause of the release," the plaintiffs sought access to "all information collected from all phones post incident," with no time limitation specified. *Id.* at 140–41. Production of these data, the plaintiffs insisted, was essential in determining whether the employees "might have been distracted by their phones when they should have been alerted to changing plant conditions that led to the release." *Id.* at 141. Despite the defendant's proposal to submit cell-phone data limited to the day of the incident, the trial court ordered production of data extending back several months before that date. *Id.* The defendant appealed, arguing that the plaintiffs' failure to show a "causal connection between cell-phone use and the release" made the data "irrelevant," rendering the trial court's production order "overbroad and beyond the permissible scope of discovery." *Id.*

In resolving the dispute, the Texas Supreme Court began its analysis by setting forth several "key principles": First, the party seeking production of cell-phone data must "provide some evidence of cell-phone use by the person whose data is sought at a time when it could have been a contributing cause of the incident on which the claim is based." *Id.* at 142. If the requesting party meets this initial burden, then the "trial court may order production of cell-phone data, provided its temporal scope is tailored to encompass only the period in which cell-phone use could have contributed to the incident." *Id.* "Only if this initial production indicates that cell-phone use could have contributed to the incident," the court stressed, "may a trial court consider whether additional discovery regarding cell-phone use beyond that timeframe may be relevant." *Id.* Applying these principles to the case before it, the court found the temporal scope of the discovery request "impermissibly overbroad." *Id.* at

143. And absent "some evidence" that the employees' earlier cell-phone use could have been a contributing cause of the incident, such usage, the court concluded, was "neither relevant nor discoverable." *Id.* at 144.

\* \* \* \*

From these cases, along with elements from our own jurisprudence and other sources of authority, we offer the following analytical framework to guide our trial courts in managing discovery requests for the production and inspection of smartphone data.

First, the party seeking production of smartphone data must provide "some evidence" of the smartphone's use by the person from whom the data is sought. *See Kuraray*, 656 S.W.3d at 142. Such evidence—whether in the form of deposition testimony, phone records, or other sources obtained by less-invasive means—must show the smartphone's use "at a time when it could have been a contributing cause of the incident on which the claim is based." *See id.* This standard presents a relatively low burden for the requesting party to overcome. We stress, however, that "[m]ere suspicion or speculation" of smartphone use is insufficient to justify intruding into the privacy interests of an opposing party. *See Estate of Logan*, 2021 WL 389412, at *4 (internal citation and quotation marks omitted).

Second, as with any discovery request, the party seeking production of smartphone data must "describe each item and category with reasonable particularity." *See* T.R. 34(B). This specificity applies to the subject matter of the information sought (*e.g.*, navigation apps) and the temporal scope of the request (*e.g.*, on the day of the incident). *See Kuraray*, 656 S.W.3d at 142. Of course, the "party need not specify the information sought where the contents of the item are unknown or unknowable." *In re WTHR-TV*, 693 N.E.2d at 8. But the party must offer something more precise than a demand for an unrestricted inspection of the smartphone or a request for "all" emails, text messages, photos, or other digital files. *See id.*; *Crabtree*, 2017 WL 413242, at *5; *Sedona Principles*, *supra*, at 87. To help narrow the request, the party can use less-invasive discovery tools like depositions, interrogatories, and requests for production of phone records.

If the requesting party meets these initial burdens ("some evidence" of smartphone use and "reasonable particularity" in description), then the trial court may order production of the smartphone data unless the opposing party objects to the discovery request. When a party objects, "a balance must be struck between the need for the information and the burden of supplying it."[4] *In re WTHR-TV*, 693 N.E.2d at 6. When crafting the appropriate relief, whether in defining the scope of discovery as a threshold matter or in response to a request for protective order, a court should consider *all* proportionality factors to determine whether the "burden or expense of the proposed discovery outweighs its likely benefit." *See* T.R. 26(B)(1) (citing T.R. 26(C)).[5] Though privacy concerns are "germane to the question of whether requested discovery is burdensome or oppressive," we stress that such concerns are *not* a per se bar to discovery of relevant information and should not be confused with legal privileges or other discovery exclusions. *See E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 434 (S.D. Ind. 2010).

In the absence of an objection, discovery may proceed, provided the temporal scope of the data sought encompasses only that period in which smartphone use "could have contributed to the incident." *See Kuraray*, 656 S.W.3d at 142. If this initial production indicates that smartphone use

---

[4] As with the party seeking discovery, the objecting party should state "the reasons for objection" with reasonable specificity and whether their objection applies to a specific item or category of data. *See* Ind. Trial Rule 34(B). This specificity should include the grounds for asserting that the request lacks proportionality and why the costs and burdens of the requested discovery outweigh the likely benefits of the discovery sought. *See* The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 70 (2018).

[5] For example, the "importance of the issues at stake in the action" may apply not only to the issues before the litigating parties but also to broader issues related to public policy or judicial doctrine. *Sedona Principles*, *supra*, at 66; *see, e.g., Terre Haute Reg'l Hosp., Inc. v. Trueblood*, 600 N.E.2d 1358, 1361 (Ind. 1992) (citing, among other things, the public interest in "being protected from incompetent physicians" to permit discovery of otherwise privileged medical records of non-party patients). As another example, if the proposed discovery plays a small part in resolving the issues litigated, the scope of discovery may be narrowed, even if the monetary amount in controversy is significant. *Sedona Principles*, *supra*, at 66–67.

could have contributed to the incident, then the court may consider whether further discovery beyond that timeframe may be relevant. *Id.*

With this analytical framework in mind, we now turn to Plaintiff's discovery request here.

## II. The trial court did not abuse its discretion by denying Plaintiff's motion to compel.

To reiterate, the Plaintiff here sought and received records from Defendant's cellphone provider as well as data from the "black box" of Defendant's car. Tr. Vol. 2, p. 7; App. Vol. 2, p. 30. When this information revealed nothing of consequence for his case, the Plaintiff sought access to Defendant's iPhone "for purposes of extracting, without modifying, data reflecting the utilization of the subject phone" on the date of the accident. App. Vol. 2, p. 39. In support of this request, the Plaintiff cited his reconstruction expert's report that Defendant was "inattentive and/or distracted" at the time of the collision, the Defendant's deposition testimony that she had used a navigation app earlier in the day, and Defendant's deposition testimony that she had "looked up" just before the accident. *Id.* at 30–32.

For the reasons below, we find no abuse of discretion by the trial court in denying Plaintiff's motion to compel.

### A. Plaintiff's discovery request lacks the necessary evidentiary support.

To begin with, Plaintiff's discovery request lacks the necessary evidentiary support—even under the relatively liberal standard set forth above. And we reach this conclusion even if we were to apply Plaintiff's "proposed safeguards" (limiting the data to a one-hour period immediately surrounding the accident and allowing opposing counsel to supervise the inspection). *See* Appellant's Reply Br. at 12.

First, despite his conclusion that the Defendant was "inattentive and/or distracted," the accident-reconstruction expert agreed that Defendant

"could not have seen [Plaintiff] before the truck passed by him as he's waiting on the corner." App. Vol. 2, p. 30; Tr. Vol. 3, p. 116. Plaintiff acknowledges this unfavorable "evidentiary interpretation" but insists that it's "not an admission that hurts" him. Pet. to Trans. at 13 (emphasis omitted). According to Plaintiff, the expert was simply "agreeing with" Defendant's counsel that she was unable to see Plaintiff as he was "'waiting on the corner' before walking across" the street. *Id.* (quoting Tr. Vol. 3, p. 116). The "location that mattered" to the expert's conclusions, Plaintiff submits, was "in the roadway" where Defendant hit him. *Id.* at 13–14 (quoting Tr. Vol. 3, p. 118). But such a proposition arguably undermines the Plaintiff's position, considering it was rush hour when the accident occurred. In any case, while claiming that Defendant must have been distracted since she never saw the Plaintiff, the expert could offer "no explanation for why [Plaintiff] never saw [Defendant's] vehicle after he walked out behind the truck." Tr. Vol. 3, p. 124.

Second, the investigating officers at the scene found no evidence that the Defendant was distracted, driving recklessly, or speeding. Likewise, two witnesses in a car immediately behind the Defendant noticed no signs of distraction or anything out of the ordinary with Defendant's driving. The driver of that car testified to having seen "something" on the side of the road as several cars were passing in the oncoming lane but couldn't tell whether it was a person and, if it was, whether "they were going to cross the street." *Id.* at 51–53. What's more, the driver attested, he didn't even see the "figure as it emerged after the truck passed." *Id.* at 53.

Third, while Defendant allegedly admitted to having "looked up" just before the accident, the officer to whom she originally made that comment testified that the phrase is "something that people commonly say" during an accident investigation. Tr. Vol. 2, p. 144. And the officer took the Defendant's comment as just that—an idiom or expression, not as an indication or admission of distraction. *Id.*

Finally, while Defendant admitted to having used the navigation app before leaving the house, she testified to having closed it before driving. Defendant's testimony aside, even if the Waze app (or other apps) were open while she was driving, Plaintiff made no showing that he (or his

expert) could determine whether the apps were simply running in the background or whether Defendant was actively using them. In fact, when Defendant's counsel raised this very point at the motion-to-compel hearing, Plaintiff's counsel responded simply that their expert knew the "difference between an active app and an app that's not running." *Id.* at 13. But even if that assertion were to suffice, and even if Defendant were actively using the Waze app, Plaintiff still fails to explain how use of the app necessarily proved that Defendant was distracted.

Because the evidence suggests that Defendant was not using her phone at the time of the accident, we cannot say the trial court abused its discretion by denying Plaintiff's motion to compel.

Still, Plaintiff insists that evidence of Defendant's phone use could "prove she's a liar." Oral Argument at 41:50–42:00. That very well may be true. But the central issue at trial (as Plaintiff repeatedly stressed in his briefings) was whether Defendant was distracted at the time of the accident, not whether Defendant was credible. And, again, evidence of app use—even if it were to impeach Defendant's testimony—does not necessarily prove distraction. To be sure, had the outcome of this case depended on Defendant's testimony alone, the exclusion of evidence undermining her credibility could have resulted in reversible error. *Cf. Oaks v. Chamberlain*, 76 N.E.3d 941, 951 (Ind. Ct. App. 2017) (holding that exclusion of testimony from defendant's *sole* expert witness had a "probable impact" on plaintiff's "substantial rights" given the implications of that testimony on the expert's credibility in opining on a central issue at trial). But that's not the case here. What's more, we can reasonably infer the jury contemplated—but ultimately rejected—the possibility of Defendant lying, considering the accident-reconstruction expert's opinion that Defendant *was* distracted by something, and considering Defendant's insistence that she "wasn't on [her] phone" in response to allegations that she was "looking down" at the time of the accident. *See* Tr. Vol. 2, p. 175. Instead, the jury reached its verdict by relying on testimony from several sources *corroborating* Defendant's position. And because that verdict assigned ninety percent fault to Plaintiff, we find it unlikely that the trial court's ruling impacted his substantial rights, thus rendering any error harmless.

## B. Plaintiff's discovery request casts too wide a net.

Even if his discovery request enjoyed the necessary evidentiary support, the Plaintiff casts "too wide a net" to justify intruding into the Defendant's smartphone. *See Crabtree*, 2017 WL 413242, at *5. Plaintiff insists otherwise by repeatedly referring to his discovery request as "ultra-targeted" or "ultra-limited" and by insisting that it "could not have been any narrower" than it was. Pet. to Trans. at 2, 5, 16, 18, 19; Appellant's Reply Br. at 16. But we find no support in the record for these assertions. Plaintiff's request for production, in fact, was extremely broad: Rather than simply wanting to see whether a navigation app (Waze) was running on Defendant's phone (as he contends in his briefings), Plaintiff sought to extract from the phone "data reflecting the utilization of the subject phone," with no stated limit on what that "data" encompassed.[6] App. Vol. 2, p. 39.

The overbroad nature of Plaintiff's request also renders the discovery he seeks, at least in part, "unreasonably cumulative or duplicative." *See* T.R. 26(B)(1). As in *Estate of Logan*, the Defendant here had already produced cellphone records for the day of the incident, and the Plaintiff fails to "identify the information [he] hopes to attain from the inspection" beyond what he's already received. *See* 2021 WL 389412, at *5. And with no limit on the "data" sought, Plaintiff's request encompasses not only the Waze navigation app but also any incoming/outgoing text messages or phone calls Defendant may have made. In fact, at the motion-to-compel hearing, Plaintiff explained that the proposed inspection would reveal "whether the phone was in use or not in use," and if it were being used, "whether it was on an app" or whether there was "texting going on" or "an e-mail being delivered." Tr. Vol. 2, p. 6. But, as noted above, Plaintiff had already subpoenaed Defendant's cellphone provider for most of these records, which ultimately revealed that Defendant had *not* been talking or

---

[6] On appeal, Plaintiff quoted his original request for production but added in his briefing that the request was limited to "the Waze App." Appellant's Br. at 28.

texting at the time of the accident.[7] Because Plaintiff's request was overbroad and would produce duplicative evidence in part, the trial court did not abuse its discretion by denying that request.

# Conclusion

For the reasons above, we hold that, because the Plaintiff failed to meet his burden of showing how any benefit of producing Defendant's iPhone for inspection outweighed Defendant's privacy interest, the trial court did not abuse its discretion by denying Plaintiff's motion to compel.[8]

Affirmed.

Rush, C.J., and Massa and Slaughter, JJ., concur.
Molter, J., dissents with separate opinion.

---

[7] The dissent insists that, rather than "seeking additional evidence to determine whether [Defendant] was making calls or exchanging text messages," Plaintiff was merely "seeking discovery of whether [Defendant] was using her phone in some other way," adding that Plaintiff's request was limited to "cell phone use around the time the accident occurred." *Post*, at 2. But the language of that request imposed no such limits. *See* App. Vol. 2, p. 39 (request for production seeking access to Defendant's iPhone "for purposes of extracting, without modifying, data reflecting the utilization of the subject phone" on the "date of the accident").

[8] Because we find insufficient evidence to support the Plaintiff's discovery request, we find no error in the trial court's enforcement of the motion in limine, prohibiting testimonial evidence related to the request, the Defendant's objection, and the court's denial of Plaintiff's motion to compel. *See* Appellant's Reply Br. at 23–24.

ATTORNEYS FOR APPELLANT

Bryan H. Babb

Bradley M. Dick

Jonathan W. Hughes

Bose McKinney & Evans LLP

Indianapolis, Indiana


ATTORNEYS FOR APPELLEE JESSICA SMILEY

Robert A. Durham

Matthew J. Trainor

State Farm Litigation Counsel

Indianapolis, Indiana


ATTORNEYS FOR APPELLEE PROGRESSIVE SOUTHEASTERN
INSURANCE CO.

Edward M. Kohan

Law Office of the Progressive Group of Insurance

Carmel, Indiana

Trevor M. Brown

McNeely Law LLP

Shelbyville, Indiana

James W. Hehner

Matthew E. Hobson

Clendening Johnson & Bohrer, P.C.

Indianapolis, Indiana

Benjamin A. Katchur

Lewis Wagner, LLP

Indianapolis, Indiana

**Molter, J., dissenting.**

I agree with the Court that our discovery rules balance "the tension between open access to information, on the one hand, and information overreach, on the other." *Ante*, at 7. At bottom, we are trying to strike the right balance "between the need for the information and the burden of supplying it." *Id.* at 7–8 (quoting *In re WTHR-TV*, 693 N.E.2d 1, 6 (Ind. 1998)); *see also Nat'l Collegiate Athletic Ass'n v. Finnerty*, 191 N.E.3d 211, 219 (Ind. 2022) (explaining that our trial rules balance "the competing goals of limiting potential discovery abuse and ensuring litigants' access to necessary information"). That requires our trial courts to right-size discovery so that it is proportional to the needs of the case. *Id.* at 7. But I respectfully disagree with the Court's holding that Jennings "failed to meet his burden of showing how any benefit of producing Defendant's iPhone for inspection outweighed Defendant's privacy interest." *Id.* at 20.

In a car accident case like this one, there is little evidence more relevant than whether a driver was distracted by their cell phone, which is the evidence Jennings sought here. Smiley acknowledged using her iPhone's navigation application to chart her route, so Jennings requested a forensic analysis of Smiley's cell phone covering only data indicating whether she was using her cell phone around the time the accident occurred. The Court concludes Jennings wasn't entitled to that data for a few reasons, but each is mistaken in my view.

First, the Court reasons that Jennings is not entitled to a forensic analysis of Smiley's cell phone because Jennings doesn't have compelling enough evidence that Smiley was using her phone at the moment the accident occurred. *Id.* at 16–17. But that is the whole point of the discovery request—to find out whether Smiley was using her cell phone when the accident occurred. Our trial rules do not condone a conundrum where parties must first provide the information they seek before they are permitted to seek it. That is why, for example, Jennings didn't first have to prove that Smiley was using her cell phone before obtaining call and text data from Verizon, and he didn't first have to prove that Smiley was driving carelessly before obtaining data from the car's black box.

Relatedly, the Court says that Jennings failed to show how Smiley was distracted by the Waze application more specifically. *Id.* at 17–18. Again, that is why Jennings needs the Waze data in the first place. That data might show, as the Court seems to suspect, that Smiley was not using the application at all, or that the application was simply announcing driving directions, in which case it seems less likely that the application distracted Smiley. On the other hand, the data might show Smiley was actively engaging with the application when the accident occurred, by inputting directions, identifying traffic hazards, adjusting the volume, or other ways of engaging with the application. If that is what the data reveals, then it becomes more likely that Jennings can show that Smiley was distracted by her cell phone.

Second, the Court considers Jennings' request to be "extremely broad" because he sought data reflecting any cell phone use around the time the accident occurred, not just data related to Smiley's use of the Waze navigation application. *Id.* at 19. I reach the opposite conclusion; this strikes me as a perfectly tailored request. The point of Jennings' inquiry was to discover whether Smiley was distracted by her cell phone. And cell phone data revealing that she was on other applications—skimming email or social media accounts, as examples—is just as relevant to determining whether she was a distracted driver as data from the Waze application would be.

Third, the Court says that Jennings' request was cumulative because it would have *included*—even though it was not *limited to*—data reflecting text messages and phone calls, and Jennings already obtained call and text data from Verizon. *Id.* at 19. But that conclusion misses a key point of Jennings' request: the Verizon data did not cover other cell phone uses, like the Waze navigation application. Jennings wasn't seeking additional evidence to determine whether Smiley was making calls or exchanging text messages; Jennings was seeking discovery of whether Smiley was using her phone in some other way when the accident occurred. So Jennings' request was *supplemental* to the Verizon data, not *cumulative* of it.

These points reflect that the Court both puts too little weight on the side of the scale balancing Jennings' need for the discovery and too much

weight on the side balancing privacy concerns. That may be a consequence of Smiley neither making any particularized showing that privacy concerns outweigh the value of the discovery, nor even attempting to explain why those concerns cannot be addressed adequately through a protective order, which is a common tool for exchanging sensitive information in discovery. *See* Tr. Vol. 2 at 7 (plaintiff's counsel offering "to enter into any kind of reasonable protective order to protect the privacy of the Defendant"). When the trial court asked defense counsel to explain why a protective order would not suffice to address any privacy concerns, defense counsel's argument was that producing the cell phone in this case would incentivize plaintiffs' lawyers in future cases to request cell phone data. *Id.* at 13 (defense counsel arguing that "this will kind of open the floodgates for allowing this discovery now in every car accident case"). That of course has nothing to do with right-sizing discovery in *this* case, and that is not an appropriate discovery consideration under our trial rules.

In sum, cell phone data revealing whether Smiley was using her phone when the accident occurred was critical to a central issue in the case—whether Smiley was a distracted driver—and the benefit of that information to resolving the case far outweighed Smiley's privacy concerns, which could have easily been addressed through a protective order. Accordingly, the trial court exceeded its discretion by denying Jennings' motion to compel, and because that error was not harmless, we should vacate the judgment. Since the Court concludes otherwise, I respectfully dissent.